**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

---

| | |
|---|---|
| AVI PUSATERI, SUSHI TOKYO INC., and CHAIM MISHULOVIN, on behalf of themselves and all others similarly situated, | Case No.: 1:25-cv-02482 |
| Plaintiffs, | **CLASS ACTION COMPLAINT** |
| v. | **<u>DEMAND FOR JURY TRIAL</u>** |
| DIAGEO NORTH AMERICA, INC., | |
| Defendant. | |

**TABLE OF CONTENTS**

**Page**

I.     INTRODUCTION ................................................................................................. 1

II.    JURISDICTION AND VENUE ......................................................................... 3

III.   PARTIES ............................................................................................................. 4

       A.     Plaintiffs .................................................................................................. 4

              1.     New York Plaintiffs ................................................................... 4

                     a.     Avi Pusateri ................................................................... 4

                     b.     Sushi Tokyo Inc ............................................................ 4

              2.     New Jersey Plaintiffs ................................................................. 4

                     a.     Chaim Mishulovin ....................................................... 4

                     b.     Avi Pusateri ................................................................... 5

       B.     Defendant Diageo North America, Inc. .................................................. 5

IV.    FACTUAL ALLEGATIONS ............................................................................. 6

       A.     The tequila spirit sector is a billion-dollar category of consumer
              alcohol sales. .......................................................................................... 6

       B.     Numerous news reports detail widespread tequila adulteration
              allegations. ............................................................................................. 6

       C.     Regulatory Background .......................................................................... 8

V.     CLASS ACTION ALLEGATIONS ................................................................. 10

VI.    CAUSES OF ACTION ...................................................................................... 14

COUNT I VIOLATIONS OF NEW YORK'S DECEPTIVE ACTS AND
       PRACTICES LAW ............................................................................................ 14

COUNT II VIOLATION OF NEW YORK'S FALSE ADVERTISING LAW ............................ 15

COUNT III VIOLATION OF THE NEW JERSEY CONSUMER FRAUD ACT ...................... 17

COUNT IV UNJUST ENRICHMENT ...................................................................................... 19

PRAYER FOR RELIEF ............................................................................................................ 21

JURY TRIAL DEMANDED .................................................................................................... 21

Plaintiffs are tequila consumers and allege the following upon personal knowledge as to themselves and their own acts, and as to all other matters upon information and belief, based upon the investigation made by and through their attorneys.

## I.      INTRODUCTION

1.      Plaintiffs bring this consumer protection class action lawsuit against Defendant Diageo North America, Inc. ("Diageo") for falsely marketing its highly popular tequila brands and selling adulterated tequila to consumers.

2.      Diageo markets its Casamigos tequila brand as a "super-premium tequila brand," and its Don Julio brand as a "*luxury* tequila."

3.      Diageo labels every bottle of Casamigos tequila as "Tequila 100% Agave Azul" and it labels its Don Julio bottles as "100% de Agave" and specifies on its websites that its bottles contain "100% BLUE WEBER AGAVE."[1]



---

[1] https://www.casamigos.com/en-us/our-process; https://www.donjulio.com/our-tequilas.

011287-11/3191535 V3



100% DE AGAVE

4.     According to United States and Mexican law, as detailed below, Blue Weber Agave (also known as Agave Tequilana or Agave Azul [blue]) is the only allowed species of agave plant that can be used as the base ingredient of the alcoholic spirit tequila. This species of agave was classified by the German botanist F. Weber in 1905 and named for its unique blue-gray color. See photo below:[2]



---

[2] By Stan Shebs, CC BY-SA 3.0, https://commons.wikimedia.org/w/index.php?curid=876846.

5.      Tequilas that are not 100% agave are commonly referred to as "mixto" and labeled as "tequila" minus the "100% agave" claim.[3] These types of tequilas may have many other undisclosed ingredients so "you don't really know what is in it."[4]

6.      Consumers pay a premium price for spirits made from 100% Blue Weber Agave because it is a crop that takes longer to grow and is more difficult to harvest and produce than other spirits such as vodka and gin.[5] Tequila also has a unique history and heritage.

7.      Plaintiffs paid super-premium prices for Casamigos and Don Julio tequila (Defendant's "Product"), but they received neither a premium product nor 100% Blue Weber Agave tequila. Instead, an investigation of Casamigos and Don Julio tequilas has shown that they consist of significant concentrations of cane or other types of alcohol rather than pure tequila.

8.      If Plaintiffs and the proposed class members had known the truth of the ingredients in the Product, they would not have bought Diageo tequilas or would have paid less. As a result, Plaintiffs bring claims on their own behalf and on behalf of other consumers of Diageo Product.

## II.      JURISDICTION AND VENUE

9.      This Court has jurisdiction pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), because the proposed Class consists of 100 or more members; the amount in controversy exceeds $5,000,000, exclusive of costs and interest; and minimal diversity exists.

10.     Venue is proper in this District under 28 U.S.C. § 1391 because a substantial part of the events or omissions and misrepresentations giving rise to Plaintiffs' claims occurred in this

---

[3] https://www.agavalestequila.com/100-agave-and-mixto-tequila.

[4] https://inspirotequila.com/tequila-101-mixto-tequila-vs-100-agave-tequila/.

[5] https://suavecitotequila.com/resources/blog/gold-and-silver-tequila-difference/.

District. Plaintiffs purchased some of Defendant's products in this District, and Defendant has marketed, advertised, and made available for sale its tequila products within this District.

### III.    PARTIES

**A.    Plaintiffs**

**1.    New York Plaintiffs**

**a.    Avi Pusateri**

11.    Plaintiff Pusateri is a resident of New York. Plaintiff Pusateri owns and operates the "Jazz Age Cocktails" Instagram and mixology group of the same name. He has purchased alcoholic beverages on numerous occasions, including tequila from the Defendant. For example, on July 25, 2023, he purchased Casamigos Blanco tequila in New York and in this district.

**b.    Sushi Tokyo Inc**

12.    Plaintiff Sushi Tokyo, Inc. ("Sushi Tokyo") is a New York corporation that is headquartered in Brooklyn, New York, where it serves classic Japanese inspired sushi and related food and beverages. Sushi Tokyo has purchased alcoholic beverages in New York on numerous occasions, including tequila from the Defendant within the applicable statute of limitations.

**2.    New Jersey Plaintiffs**

**a.    Chaim Mishulovin**

13.    Plaintiff Chaim Mishulovin is a resident of New Jersey. He has purchased alcoholic beverages in New Jersey on numerous occasions, including Defendant's tequila. For example, on June 27, 2024, he purchased Casamigos Blanco (Silver), Reposado (Aged), and Anejo (Extra-Aged) tequila bottles in New Jersey.

### b.     Avi Pusateri

14.     Plaintiff Pusateri is a resident of New York, but also purchased Defendant's tequila in New Jersey. For example, on January 21, 2025, Avi Pusateri purchased Don Julio 1942 tequila in New Jersey.

## B.     Defendant Diageo North America, Inc.

15.     Diageo is a global leader in the beverage alcohol industry with brands across the spirits and beer markets worldwide. It is headquartered in New York and incorporated in Connecticut. It sells the best-selling brand Casamigos tequila, which is one of the top trending tequila brands in the world.[6] Diageo acquired Casamigos in 2017 in a deal worth up to US $1 billion after the brand was founded by actor George Clooney, Rande Gerber, and Mike Meldman in 2013.[7] In a press release, Diageo boasted that Casamigos was "the fastest growing super-premium tequila brand in the US."[8] In 2023, data indicated that Casamigos was the world's fourth biggest-selling tequila with case sales of 3 million.[9] According to the U.S. Distilled Spirits Council, the U.S. imported $3.8 billion of tequila in the first nine months of 2024, which is up 13% from the same period a year earlier and more than whiskey, gin, rum, brandy, and vodka imports combined.[10]

---

[6] Brands Report 2025: Tequila (Jan. 13, 2025), https://m.drinksint.com/news/fullstory.php/aid/11552/Brands_Report_2025:_Tequila.html.

[7] Nicola Carruthers, *Diageo goes 'back to basics' with Casamigos*, The Spirits Business (Feb. 6, 2025), https://www.thespiritsbusiness.com/2025/02/diageo-goes-back-to-basics-with-casamigos/.

[8] https://www.diageo.com/en/news-and-media/press-releases/2017/diageo-completes-acquisition-of-super-premium-tequila-casamigos

[9] *Id.*

[10] Jose Luis Osorio & Sarah Morland, *Mexican tequila makers fret as US tariffs threaten their business*, REUTERS (Feb. 17, 2025), https://www.reuters.com/world/americas/mexican-tequila-makers-fret-us-tariffs-threaten-their-business-2025-02-17.

16.     Diageo also sells and markets its Don Julio tequila brand as a "luxury premium tequila." In 2023, it was the second biggest-selling tequila with case sales of 3.4 million.[11]

## IV.    FACTUAL ALLEGATIONS

**A.    The tequila spirit sector is a billion-dollar category of consumer alcohol sales.**

17.     According to Diageo's CEO, the tequila market has in recent years been growing at plus-6% in the United States.[12] Consumers are attracted to tequila because of its versatility as a mixer, growing appreciation for its supposed authentic production, cultural appreciation, and a boost from celebrity endorsements like actor George Clooney.

**B.    Numerous news reports detail widespread tequila adulteration allegations.**

18.     Multiple sources of information indicate that there is significant adulteration of tequila that is exported from Mexico. For example, in January 2025, Mexican business media platform Lider Empresarial reported that thousands of agave growers in Mexico angrily demonstrated against major tequila companies protesting the use of non-agave ingredients, and a legal representative of the Mexican Agave Council, (Consejo Mexicano del Agave or CMXDA), an organization that advocates for the rights of agave farmers, disclosed that tequila was adulterated with cane alcohol.[13]

19.     Similarly, the authoritative website Mezcalistas reported that numerous agave farmers protested the lack of tequila industry regulatory compliance and held a banner asserting "NO MORE ADULTERATED TEQUILA! TEQUILA MUST BE 100% AGAVE!"[14] One of the

---

[11] Carruthers, *supra* note 7.

[12] *Id.*

[13] Maria Hernandez Figueroa, *Agaveros exigen «eliminar monopolios» en la Industria Tequilera*, Lider Empresarial (Jan. 10, 2025), https://www.liderempresarial.com/agaveros-exigen-eliminar-monopolios-en-la-industria-tequilera/.

[14] Felisa Rogers, *What are you drinking? Agave farmers allege tequila industry corruption*, Mezcalistas (Jan. 13, 2025), https://www.mezcalistas.com/tequila-industry-corruption/.

protest organizers shouted, "We are here to ensure that they're not going to keep mixing cane alcohol and other substances that aren't agave!"[15] The agave farmers claim that tequila is supposed to be regulated by Mexico's Tequila Regulatory Council ("CRT") but that the CRT is a nonprofit organization that is heavily influenced and controlled by "big tequila."[16]

20.    There are reports that "CRT officials have been turning a profit by allowing some tequila corporations to mix cane or corn alcohol into tequila that's then labeled as 100 percent agave."[17] This has been confirmed by sending "samples of tequila for laboratory analysis" and observing "trucks delivering cane alcohol to distilleries."[18]

21.    Tequila manufacturing requires the cultivation, fermentation, and distillation of Blue Weber Agave, and because this type of agave takes five to ten years to mature for harvest, this "creates ongoing tension in the industry, as well as the temptation to cut corners."[19]

22.    According to Remberto Galván Cabrera, a spokesperson for the Mexican Agave Council, "when agave prices were high, large tequila companies began mixing cane alcohol into tequila that they sold as 100% agave."[20] These practices have not ceased.[21]

23.    The Additive Free Alliance ("AFA"), an organization dedicated to tequila industry transparency, has shown that it is possible to use Nuclear Magnetic Resonance laboratory testing to "confirm if tequila has been adulterated with cane alcohol."[22]

---

[15] *Id.*

[16] *Id.*

[17] *Id.*

[18] *Id.*

[19] *Id.*

[20] Felisa Rogers, *Agave farmers say they will no longer play nice*, Mezcalistas (Jan. 15, 2025), https://www.mezcalistas.com/breaking-tequila-news/.

[21] *Id.*

[22] *What are you drinking?*, *supra* note 14.

011287-11/3191535 V3

24.     It has confirmed through testing that plaintiffs purchased tequila that was not 100% agave spirits and, as described below, did not meet the regulatory requirements of the United States or Mexico.

25.     Plaintiffs purchased Defendant's Product (i.e., Casamigos and Don Julio tequila) and would not have paid premium prices absent Defendant's false and misleading statements and omissions.

26.     Plaintiffs intend to purchase Defendant's Product again when they can do so with the assurance that the representations of Defendant's Product are accurate.

**C.     Regulatory Background**

27.     Tequila is partially regulated in the United States by the U.S. Department of the Treasury, Alcohol and Tobacco Tax and Trade Bureau ("TTB") pursuant to 27 C.F.R. Part 5, which regulates the labeling and advertising of distilled spirits.

28.     A distilled spirit made from agave plants may only contain added flavoring or coloring materials if they "do not total more than 2.5 percent by volume of the finished product." 27 C.F.R. § 5.155.

29.     An agave spirit can only be classified as "Tequila" when it is "made in Mexico, in compliance with the laws and regulations of Mexico governing the manufacture of Tequila for consumption in that country." 27 C.F.R. § 5.148.

30.     Mexico regulates the manufacture of tequila through the Tequila Regulatory Council ("CRT"), which is the Conformity Assessment Body for NOM-006-SCFl-2012-Alcoholic Beverages-Tequila-Specifications ("Tequila NOM").[23]

---

[23] https://www.crt.org.mx/wp-content/uploads/2024/01/NOM-006-SCFI-2012%20-%20INGLES.pdf

31.    The Tequila NOM in section (numeral) 6.1.1.1 states that the addition of sugar-based syrups "must not be more than 1% in relation to the total Tequila weight before it is bottled."

32.    The Tequila NOM in section 5.1.1 states that a product labeled as "100% agave [azul]" or "100% de agave" is "a product whose fermentation may not be enhanced with sugars other than those obtained from the tequilana weber blue variety Agave grown in the territory specified in the Declaration [i.e., Mexican territories authorized for the growing of Blue Weber Agave]."

33.    The Tequila NOM further states in section 5.1.2 that only tequila that is not 100% blue variety agave may have "other sugars in a proportion not to exceed 49% of total reducing sugars expressed in units of mass. This maximum enhancement of up to 49% of total reducing sugars expressed in units of mass may not be done with sugars from any species of Agave." However, "[t]he 51% of total reducing sugars expressed in units of mass may only be enhanced with *tequilana weber blue variety* agave . . . ." *See also* NOM section 6.3 (only authorizing tequila that is not 100% agave azul from being "enhanced with other sugars in the fermentation process").

34.    The Tequila NOM in section 6.5.2.1 imposes strict documentation requirements to ensure that tequila "has not been adulterated in the manufacturing stages of its production."

35.    Bottles of agave spirits that fail to provide accurate information in interstate commerce violate the Federal Alcohol Administration Act ("FAAA"), 27 U.S.C. § 205(e), which requires bottles to provide the "identity and quality of the products, [and] the alcoholic content thereof."

36.     New York incorporates federal legal standards in its Alcoholic Beverage Control ("ABC") law, ABC § 107-a(5), which requires labels that are consistent with TTB regulations and further prohibits labels with "any statement that is false or untrue in any particular manner." *See also* 9 NYCRR § 84.1 (adopting federal regulations and prohibiting labels that "would tend to deceive the consumer").

37.     New Jersey law also incorporates federal standards and states that "[a]ny alcoholic beverage . . . shall . . . be deemed prima facie an illicit beverage where the container . . . bears a label which does not truly describe its contents." N.J. Stat. Ann. § 33:1-88; *see also* N.J. Admin. Code § 13:2-27.1 (adopting federal regulations in 27 C.F.R. Part 5 for the labeling and advertising of distilled spirits).

## V.     CLASS ACTION ALLEGATIONS

38.     Plaintiffs bring this action on behalf of themselves and as a class action pursuant to the provisions of Rule 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure on behalf of the following classes:[24]

### New York Class:

> All persons who, during the applicable statute of limitations to the present, purchased Defendant's Product in New York.

### New Jersey Class:

> All persons who, during the applicable statute of limitations to the present, purchased Defendant's Product in New Jersey.

39.     Excluded from the Class are the Defendant and its officers, directors, management, employees, subsidiaries, or affiliates. Also excluded are the district judge or magistrate judge to whom this case is assigned, as well as those judges' immediate family

---

[24] Collectively, the "Class," unless otherwise noted.

members, judicial officers and their personnel, and all governmental entities. Plaintiffs reserve the right to revise the Class definition based upon information learned through discovery.

40.     Certification of Plaintiffs' claims for classwide treatment is appropriate because Plaintiffs can prove the elements of their claims on a classwide basis using the same evidence as would be utilized to prove those elements in individual actions alleging the same claims.

41.     This action has been brought and may be properly maintained on behalf of each of the Classes proposed herein under Federal Rule of Civil Procedure 23.

42.     <u>Numerosity</u>. Federal Rule of Civil Procedure 23(a)(1): The members of the Class are so numerous and geographically dispersed that individual joinder of all Class members is impracticable. Plaintiffs are informed Defendant sells millions of cases of tequila each year, including thousands of bottles in each relevant state. Class members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. Mail, email, text messages, social media, internet postings, and/or published notice.

43.     Class members may also be notified of this case because Defendant's websites direct consumers to purchase tequila through online third-party retailers that maintain records of class member purchasers and contact information.

44.     <u>Commonality and Predominance.</u> Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3): This action involves common questions of law and fact, which predominate over any questions affecting individual Class members, including, without limitation:

(a)     Whether Defendant engaged in the conduct alleged herein;

(b)     Whether Defendant designed, advertised, marketed, distributed, sold, or otherwise placed adulterated tequila into the stream of commerce in the United States;

-11-

(c)   Whether Defendant sources its tequila from suppliers that provide adulterated tequila;

(d)   Whether Defendant made specific claims to consumers that it sold or distributed agave spirits that were "Tequila 100% Agave Azul," or "100% de Agave," or "100% BLUE WEBER AGAVE";

(e)   Whether Defendant knew or suspected that it sold adulterated tequila and, if so, how long Defendant has known or suspected this issue;

(f)   Whether Defendant's conduct violates consumer protection statutes and other laws as asserted herein;

(g)   Whether Defendant knew or should have known of adulterated tequila issues inherent in its supply chain;

(h)   Whether Plaintiffs and the other Class members overpaid for tequila from the Defendant as a result of the allegations herein;

(i)   Whether Plaintiffs and the other Class members are entitled to equitable relief; and

(j)   Whether Plaintiffs and the other Class members are entitled to damages and other monetary relief and, if so, in what amount.

45.   Typicality. Federal Rule of Civil Procedure 23(a)(3): Plaintiffs' claims are typical of the other Class members' claims because, among other things, all Class members were comparably injured through Defendant's wrongful conduct as described above.

46.   Adequacy. Federal Rule of Civil Procedure 23(a)(4): Plaintiffs are adequate Class representatives because their interests do not conflict with the interests of the other members of the Classes each respectively seeks to represent; Plaintiffs have retained counsel competent and

experienced in complex class action litigation; and Plaintiffs intend to prosecute this action vigorously. The Class's interests will be fairly and adequately protected by Plaintiffs and their counsel.

47.    <u>Declaratory and Injunctive Relief.</u> Federal Rule of Civil Procedure 23(b)(2): Defendant has acted or refused to act on grounds generally applicable to Plaintiffs and the other members of the Class, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to the Class as a whole.

48.    <u>Superiority.</u> Federal Rule of Civil Procedure 23(b)(3): A class action is superior to any other available means for the fair and efficient adjudication of this controversy and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiffs and the other Class members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendant, so it would be impracticable for Class members to individually seek redress for Defendant's wrongful conduct. Even if Class members could afford individual litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments, and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

## VI.    CAUSES OF ACTION

### COUNT I

#### VIOLATIONS OF NEW YORK'S DECEPTIVE ACTS AND PRACTICES LAW
#### (N.Y. Gen. Bus. Law § 349 on Behalf of the New York Class)

49.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this complaint.

50.    This claim is brought by the New York Plaintiffs individually and on behalf of the New York Class for purchases that occurred in New York.

51.    The New York General Business Law ("GBL") § 349 prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce."

52.    Plaintiffs and the New York Class members are "persons" within the meaning of N.Y. Gen. Bus. Law § 349(h).

53.    Defendant is a "person," "firm," "corporation," or "association" within the meaning of N.Y. Gen. Bus. Law § 349.

54.    In its advertising and sale of goods throughout New York, Defendant conducts business and trade within the meaning of GBL § 349.

55.    Defendant's deceptive acts and practices consisted of selling spirits that were falsely labeled as "Tequila 100% Agave Azul," or "100% de Agave," or "100% BLUE WEBER AGAVE."

56.    Defendant's deceptive acts and practices were directed at consumers and intended to or did mislead consumers that purchased Defendant's adulterated tequila.

57.    Defendant's sale of adulterated tequila was consumer-oriented because it had a broad impact on consumers at large, instead of only affecting a single transaction or the Plaintiffs.

58.     The Defendant's sale of adulterated tequila was deceptive in a material way—that is, that a reasonable consumer acting reasonably in the Plaintiffs' circumstances would have been misled by the Defendant's statements and those of its agents that it sold "Tequila 100% Agave Azul," or "100% de Agave," or "100% BLUE WEBER AGAVE."

59.     Plaintiffs saw or heard these statements before they came into possession of the products they purchased from Defendant.

60.     Defendant's statements and those of its agents permitted it to charge a premium price for its Casamigos and Don Julio tequila, even though these spirits were not "Tequila 100% Agave Azul," or "100% de Agave," or "100% BLUE WEBER AGAVE."

61.     Defendant's false statements actually caused the Plaintiffs and other members of the New York class to pay more than if Defendant's product were truthfully labeled.

62.     Plaintiffs' injuries were a direct, actual injury beyond the deception itself.

63.     Because Defendant's deceptive acts or practices in the conduct of its business, trade or commerce was willful and knowing conduct and caused injury to Plaintiffs, Plaintiffs seek recovery of actual damages or $50, whichever is greater; discretionary treble damages up to $1,000; punitive damages; reasonable attorneys' fees and costs; an order enjoining Defendant's deceptive conduct; and any other just and proper relief available under GBL § 349.

## COUNT II

### VIOLATION OF NEW YORK'S FALSE ADVERTISING LAW
### (N.Y. Gen. Bus. Law § 350 on Behalf of the New York Class)

64.     Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this complaint.

65.     This claim is brought by the New York Plaintiffs individually and on behalf of the New York Class for purchases that occurred in New York.

011287-11/3191535 V3

66.    The New York General Business Law ("GBL") § 350 prohibits "[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state."

67.    False advertising means "advertising, including labeling, of a commodity . . . if such advertising is misleading in a material respect." GBL § 350-A.

68.    Plaintiffs and the New York Class members are "persons" within the meaning of GBL § 350-E.

69.    Defendant's false advertising consisted of selling and marketing spirits that were falsely labeled or marketed as "Tequila 100% Agave Azul," or "100% de Agave," or "100% BLUE WEBER AGAVE."

70.    Defendant's false advertising was directed at consumers and intended to or did mislead consumers that purchased Defendant's adulterated tequila.

71.    Defendant's sale of adulterated tequila was consumer-oriented because it had a broad impact on consumers at large, instead of only affecting a single transaction or the Plaintiffs.

72.    The Defendant's sale of adulterated tequila was deceptive in a material way—that is, that a reasonable consumer acting reasonably in the Plaintiffs' circumstances would have been misled by the Defendant's statements and those of its agents that it sold "Tequila 100% Agave Azul," or "100% de Agave," or "100% BLUE WEBER AGAVE."

73.    Plaintiffs saw or heard these false tequila descriptions before they came into possession of the products they purchased from Defendant.

74.     Defendant's statements and those of its agents permitted it to charge a premium price for its Casamigos and Don Julio tequila, even though these spirits were not "Tequila 100% Agave Azul," or "100% de Agave," or "100% BLUE WEBER AGAVE."

75.     Defendant's false statements actually caused the Plaintiffs and other members of the New York class to pay more than if Defendant's product were truthfully labeled and advertised.

76.     Plaintiffs' injuries were a direct, actual injury beyond the deception itself.

77.     Plaintiffs were also injured by reason of Defendant's false advertising and seek to enjoin Defendant's unlawful acts and practices and to recover their actual damages or $500 dollars, whichever is greater, and their attorney's fees. GBL § 350-E.

78.     If this Court finds that Defendant willfully or knowingly engaged in false advertising, Plaintiffs seek three times their actual damages or $10,000. GBL § 350-E.

### COUNT III

### VIOLATION OF THE NEW JERSEY CONSUMER FRAUD ACT
### (N.J. Stat. Ann. § 56:8–1 *et. seq.* on Behalf of the New Jersey Class)

79.     Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this complaint.

80.     This claim is brought by the New Jersey Plaintiffs individually and on behalf of the New Jersey Class.

81.     Plaintiffs and the New Jersey Class members are "persons" within the meaning of N.J. Stat. Ann. § 56:8–19.

82.     Defendant made untrue, false, deceptive and/or misleading statements in connection with the advertising and marketing of its Product in violation of N.J. Stat. Ann. § 56:8-2.

83.    Defendant made representations and statements (by omission and commission) that led reasonable consumers to believe that they were purchasing agave spirits that were "Tequila 100% Agave Azul," or "100% de Agave," or "100% BLUE WEBER AGAVE." Defendant deceptively failed to inform Plaintiffs, and those similarly situated, that its Products did not actually satisfy the requirements to be labeled "Tequila 100% Agave Azul" or any related assertion.

84.    Plaintiffs and those similarly situated relied to their detriment on Defendant's false, misleading and deceptive advertising and marketing practices, including, without limitation, the misrepresentations and omissions noted above. If Plaintiff and those similarly situated had been adequately informed and not deceived by Defendant, they would have acted differently by, without limitation, refraining from purchasing Defendant's Products, paying less for them or purchasing smaller quantities.

85.    Defendant's acts and omissions are likely to deceive the general public. Defendant engaged in these false, misleading and deceptive advertising and marketing practices to increase its profits. Accordingly, Defendant has engaged in false advertising, as defined and prohibited by section 56:8-1, et. seq., of the New Jersey Consumer Fraud Act.

86.    Plaintiffs seek, on behalf of those similarly situated, full restitution of monies, as necessary and according to proof, to restore any and all monies acquired by Defendant from Plaintiffs, the general public, or those similarly situated by means of the false, misleading and deceptive advertising and marketing practices complained of herein, plus interest thereon.

87.    Plaintiffs seek, on behalf of those similarly situated, an injunction to prohibit Defendant from continuing to engage in the false, misleading and deceptive advertising and

marketing practices complained of herein. The acts complained of herein occurred, at least in part, within four (4) years preceding the filing of this Complaint.

88.     Plaintiffs and those similarly situated are further entitled to and do seek both a declaration that the above-described practices constitute false, misleading and deceptive advertising, and injunctive relief restraining Defendant from engaging in any such advertising and marketing practices in the future. In the absence of such equitable relief, Defendant could renew the misconduct alleged herein, and such misconduct by Defendant, unless and until enjoined and restrained by order of this Court, will continue to cause injury in fact to Plaintiffs and the general public and the loss of money and property in that the Defendant will continue to violate the laws of New Jersey. This expectation of future violations will require current and future customers to repeatedly and continuously seek legal redress in order to recover monies paid to Defendant to which Defendant is not entitled. Plaintiffs and those similarly situated have no other adequate remedy at law to ensure future compliance with the New Jersey Consumer Fraud Act alleged to have been violated herein.

89.     As a direct and proximate result of such actions, Plaintiffs and the other members of the Class have suffered, and continue to suffer, injury in fact and have lost money and/or property as a result of such false, deceptive and misleading advertising in an amount which will be proven at trial, but which is in excess of the jurisdictional minimum of this Court.

## COUNT IV

### UNJUST ENRICHMENT
### (On behalf of all Plaintiffs and all Classes)

90.     Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this complaint.

011287-11/3191535 V3

91.    Substantial benefits have been conferred on Defendant by Plaintiffs and the members of the Class through the purchase of the Products. Defendant knowingly and willfully accepted and enjoyed these benefits.

92.    Defendant either knew or should have known that the payments rendered by Plaintiffs were given with the expectation that the Products were Tequila 100% Agave. As such, it would be inequitable for Defendant to retain the benefit of the payments under these circumstances.

93.    Defendant was obligated to disclose the Product was not Tequila 100% Agave because:

(a)    Defendant was responsible for manufacturing and distributing its Product; and

(b)    Defendant knew or should have known that its Product was not Tequila 100% Agave.

94.    Defendant's acceptance and retention of these benefits of the payments from Plaintiffs and the Classes under the circumstances alleged herein make it inequitable for Defendant to retain the benefits without payment of the value to Plaintiffs and the Classes.

95.    Plaintiffs and the Classes are entitled to recover from Defendant all amounts wrongfully collected and improperly retained by Defendant, plus interest thereon.

96.    Plaintiffs and the Classes seek actual damages, injunctive and declaratory relief, statutory damages, attorneys' fees, costs, and any other just and proper relief available under the applicable laws.

011287-11/3191535 V3

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment against Defendant as follows:

A.      The Court determine that this action may be maintained as a class action under Rules 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure, appoint Plaintiffs as Class Representatives and their counsel of record as Class Counsel, and direct that notice of this action, as provided by Rule 23(c)(2) of the Federal Rules of Civil Procedure, be given to the Class, once certified;

B.      Adjudication that the acts alleged herein constitute violations of New York's laws protecting consumers from deceptive acts and practices, including N.Y. Gen. Bus. Law §§ 349-350;

C.      Adjudication that the acts alleged herein constitute violations of the New Jersey Consumer Fraud Act, N.J. Stat. Ann. § 56:8–1 *et. seq.*;

D.      Adjudication that the acts alleged herein constitute unjust enrichment;

E.      Judgment against Defendant for the damages sustained by Plaintiffs and the Classes, and for any additional damages, penalties and other monetary relief provided by applicable law, including treble damages;

F.      Pre-judgment and post-judgment interest on such monetary relief;

G.      Equitable relief requiring that Defendant cease its violations of law as requested;

H.      The costs of bringing this suit, including reasonable attorneys' fees; and

I.      All other relief to which Plaintiffs and members of the Classes may be entitled at law or in equity.

## JURY TRIAL DEMANDED

Plaintiffs hereby demand a trial by jury of all the claims asserted in this Complaint.

011287-11/3191535 V3

DATED this May 5, 2025

Respectfully submitted,

By: */s/ Nathaniel A. Tarnor*
Nathaniel A. Tarnor (NT2797)
HAGENS BERMAN SOBOL SHAPIRO LLP
594 Dean Street, Suite 24
Brooklyn, NY 11238
Telephone: (646) 543-4992
NathanT@hbsslaw.com

HAGENS BERMAN SOBOL SHAPIRO LLP
Steve W. Berman (*pro hac vice* application forthcoming)
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
steve@hbsslaw.com

THE BERKMAN LAW OFFICE, LLC
Robert J. Tolchin
829 E. 15th Street
Brooklyn, NY 11230
Telephone: (917) 405-0426
rtolchin@berkmanlaw.com

*Attorneys for Plaintiffs and the Proposed Classes*