**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

---

AVI PUSATERI, SUSHI TOKYO INC.,
CHAIM MISHULOVIN, SUSHI TOKYO
MIAMI LLC, DAVID FELTON, BARRY
WILHELM, SHANNON WILHELM, TRACY
COLE, NELSON NJOROGE, ANTOINE
DOXON, TIEASE HOLMES, DYONNESHA
WOOLFOLK, and TROY REECE on behalf of
themselves and all others similarly situated,

                    Plaintiffs,

    v.

DIAGEO NORTH AMERICA, INC.,

                  Defendant.

Case No.: 1:25-cv-02482-LDH-CHK

**AMENDED CLASS ACTION
COMPLAINT**

**DEMAND FOR JURY TRIAL**

**TABLE OF CONTENTS**

**Page**

I.     INTRODUCTION ................................................................................................. 1

II.    JURISDICTION AND VENUE ......................................................................... 3

III.   PARTIES ............................................................................................................. 4

    A.     Plaintiffs ................................................................................................... 4

        1.     New York Plaintiffs ..................................................................... 4

            a.     Avi Pusateri ..................................................................... 4

            b.     Sushi Tokyo Inc. ............................................................. 4

        2.     New Jersey Plaintiffs ................................................................... 4

            a.     Chaim Mishulovin. .......................................................... 4

            b.     Avi Pusateri ..................................................................... 5

        3.     Florida Plaintiffs ......................................................................... 5

            a.     Sushi Tokyo Miami LLC. ................................................ 5

            b.     David Felton ..................................................................... 5

            c.     Barry Wilhelm. ................................................................. 6

            d.     Shannon Wilhelm .............................................................. 6

        4.     Colorado Plaintiffs ...................................................................... 6

            a.     Tracy Cole ........................................................................ 6

            b.     Nelson Njoroge. ................................................................ 7

        5.     Maryland Plaintiffs ...................................................................... 7

            a.     Nelson Njoroge. ................................................................ 7

            b.     Antoine Doxon. ................................................................ 7

        6.     Pennsylvania Plaintiff ................................................................. 7

            a.     Antoine Doxon. ................................................................ 7

        7.     Illinois Plaintiffs .......................................................................... 8

            a.     Tiease Holmes ................................................................... 8

            b.     Dyonnesha Woolfolk. ...................................................... 8

8. Texas Plaintiffs ....................................................................... 8

    a. Troy Reece. ............................................................. 8

    b. Nelson Njoroge. ...................................................... 8

B. Defendant Diageo North America, Inc. ............................................ 9

IV. FACTUAL ALLEGATIONS ...................................................................... 10

A. The tequila spirit sector is a billion-dollar category of consumer alcohol sales. ..................................................................................... 10

B. Numerous news reports detail widespread tequila adulteration allegations. ....................................................................................... 10

C. Regulatory Background ................................................................... 15

V. Tolling ............................................................................................. 17

VI. CLASS ACTION ALLEGATIONS ............................................................. 19

VII. CAUSES OF ACTION ......................................................................... 23

FIRST CLAIM FOR RELIEF VIOLATIONS OF NEW YORK'S DECEPTIVE ACTS AND PRACTICES LAW (N.Y. Gen. Bus. Law § 349 on Behalf of the New York Class) ........................................................................... 23

SECOND CLAIM FOR RELIEF VIOLATION OF NEW YORK'S FALSE ADVERTISING LAW (N.Y. Gen. Bus. Law § 350 on Behalf of the New York Class) ............................................................................................. 24

THIRD CLAIM FOR RELIEF VIOLATION OF THE NEW JERSEY CONSUMER FRAUD ACT (N.J. Stat. Ann. § 56:8–1, *et seq.*, on Behalf of the New Jersey Class) ........................................................................ 26

FOURTH CLAIM FOR RELIEF VIOLATION OF THE FLORIDA DECEPTIVE & UNFAIR TRADE PRACTICES ACT (Fla. Stat. § 501.201, *et seq.*, on Behalf of the Florida Class) ........................................................... 28

FIFTH CLAIM FOR RELIEF VIOLATION OF THE COLORADO CONSUMER PROTECTION ACT (Colo. Rev. Stat. § 6-1-101, *et seq.*, on Behalf of the Colorado Class) ................................................................ 30

SIXTH CLAIM FOR RELIEF VIOLATION OF THE MARYLAND CONSUMER PROTECTION ACT (MD. CODE LAW § 13-101, *et seq.*, on Behalf of the Maryland Class) ................................................................ 31

SEVENTH CLAIM FOR RELIEF VIOLATION OF THE PENNSYLVANIA
     UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION LAW
     (73 PA. CONS. STAT. § 201-1, *et seq*., on Behalf of the Pennsylvania
     Class)......................................................................................................................... 32

EIGHTH CLAIM FOR RELIEF VIOLATION OF THE ILLINOIS CONSUMER
     FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT (815 ILL.
     COMP. STAT. § 505/1, *et seq*., on Behalf of the Illinois Class) ...................................... 33

NINTH CLAIM FOR RELIEF VIOLATION OF THE TEXAS DECEPTIVE
     TRADE PRACTICES AND CONSUMER PROTECTION ACT (TEX.
     BUS. & COM. CODE § 17.4, *et seq*., on Behalf of the Texas Class) .................................. 34

TENTH CLAIM FOR RELIEF UNJUST ENRICHMENT (On behalf of all
     Plaintiffs and all Classes).................................................................................................. 36

Plaintiffs are tequila consumers and allege the following upon personal knowledge as to themselves and their own acts, and as to all other matters upon information and belief, based upon the investigation made by and through their attorneys.

## I.     INTRODUCTION

1.     Plaintiffs bring this consumer protection class action lawsuit against Defendant Diageo North America, Inc. ("Diageo") for falsely marketing its highly popular tequila brands and selling adulterated tequila to consumers.

2.     Diageo markets its Casamigos tequila brand as a "super-premium tequila brand," and its Don Julio brand as a "*luxury* tequila."

3.     Diageo labels every bottle of Casamigos tequila as "Tequila 100% Agave Azul" and it labels its Don Julio bottles as "100% de Agave" and specifies on its websites that its bottles contain "100% BLUE WEBER AGAVE."[1]



---

[1] https://www.casamigos.com/en-us/our-process; https://www.donjulio.com/our-tequilas.



100% DE AGAVE

4. According to United States and Mexican law, as detailed below, Blue Weber agave (also known as Agave Tequilana or Agave Azul [blue]) is the only allowed species of agave plant that can be used as the base ingredient of the alcoholic spirit tequila. This species of agave was classified by the German botanist F. Weber in 1905 and named for its unique blue-gray color. See photo below:[2]



---

[2] By Stan Shebs, CC BY-SA 3.0, https://commons.wikimedia.org/w/index.php?curid=876846.

5.     Tequilas that are not 100% agave are commonly referred to as "mixto" and labeled as "tequila" minus the "100% agave" claim.[3] These types of tequilas may have many other undisclosed ingredients so "you don't really know what is in it."[4]

6.     Consumers pay a premium price for spirits made from 100% Blue Weber agave because it is a crop that takes longer to grow and is more difficult to harvest and produce than other spirits such as vodka and gin.[5] Tequila also has a unique history and heritage.

7.     Plaintiffs paid super-premium prices for Casamigos and Don Julio tequila (Diageo's "Product" or "Products"), but they received neither a premium product nor 100% Blue Weber agave tequila. Instead, an investigation of Casamigos and Don Julio tequilas has shown that they consist of significant concentrations of cane or other types of alcohol rather than pure tequila.

8.     If Plaintiffs and the proposed class members ("Class Members") had known the truth of the ingredients in Diageo's Product, they would not have bought Diageo's Product or would have paid less. As a result, Plaintiffs bring claims on their own behalf and on behalf of other consumers of Diageo's Product.

## II.     JURISDICTION AND VENUE

9.     This Court has jurisdiction pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), because the proposed Class consists of 100 or more members; the amount in controversy exceeds $5,000,000, exclusive of costs and interest; and minimal diversity exists.

10.     Venue is proper in this District under 28 U.S.C. § 1391 because a substantial part of the events or omissions and misrepresentations giving rise to Plaintiffs' claims occurred in this

---

[3] https://www.agavalestequila.com/100-agave-and-mixto-tequila.
[4] https://inspirotequila.com/tequila-101-mixto-tequila-vs-100-agave-tequila/.
[5] https://suavecitotequila.com/resources/blog/gold-and-silver-tequila-difference/.

District. Some Plaintiffs purchased Diageo's Product in this District, and Diageo has marketed, advertised, and made available for sale its tequila products within this District.

### III.    PARTIES

**A.    Plaintiffs**

**1.    New York Plaintiffs**

**a.    Avi Pusateri.**

11.    Plaintiff Avi Pusateri is a resident of New York. He owns and operates the "Jazz Age Cocktails" Instagram account and mixology group of the same name. He has purchased Diageo's Product on numerous occasions. For example, on July 25, 2023, he purchased Casamigos Blanco tequila in this District.[6]

**b.    Sushi Tokyo Inc.**

12.    Plaintiff Sushi Tokyo, Inc. ("Sushi Tokyo") is a New York corporation headquartered in Brooklyn, New York. It operates a restaurant that serves Japanese-inspired sushi and related food and beverages. Sushi Tokyo has purchased Diageo's Product on numerous occasions within the applicable statute of limitations.[7]

**2.    New Jersey Plaintiffs**

**a.    Chaim Mishulovin.**

13.    Plaintiff Chaim Mishulovin is a resident of New Jersey. He has purchased Diageo's Product in New Jersey on numerous occasions. For example, on June 27, 2024, he

---

[6] The tequila was purchased from *My Favorite Wine & Liquor*, 2790 Long Beach Rd., Oceanside, NY 11572, and Pusateri paid $30.40 for Casamigos Blanco.

[7] For example, Sushi Tokyo purchased Diageo tequila from *Southern Glazer's of NY Metro*, Hicksville, NY 11802 on April 2, 2024, including bottles of Casamigos Anejo ($108.46), Blanco ($139.59), and Resposado ($155.70); on October 30, 2024, including bottles of Casamigos Anejo ($56.63), Blanco ($255.20), and Resposado ($53.30); on December 9, 2024, including bottles of Casamigos Blanco ($255.20) and Don Julio Tequila Reposado ($55.68); and on February 4, 2025, including bottles of Casamigos Reposado ($156.90).

purchased Casamigos Blanco (Silver), Reposado (Aged), and Anejo (Extra-Aged) tequila bottles in New Jersey.[8]

### b. Avi Pusateri.

14. Plaintiff Avi Pusateri is a resident of New York who also purchased Diageo's Product in New Jersey. For example, on January 21, 2025, Avi Pusateri purchased Don Julio 1942 Añejo tequila.[9]

### 3. Florida Plaintiffs

### a. Sushi Tokyo Miami LLC.

15. Plaintiff Sushi Tokyo Miami LLC ("Sushi Tokyo Miami" d/b/a "Hikari") is a Florida business entity headquartered in Miami, Florida. It operates a restaurant that serves Japanese-inspired sushi and related food and beverages. Sushi Tokyo Miami has purchased Diageo's Product in Florida on numerous occasions within the applicable statute of limitations.[10]

### b. David Felton.

16. Plaintiff David Felton is a resident of Florida. He has purchased Diageo's Product in Florida on numerous occasions. For example, on January 22, 2025, he purchased Don Julio Blanco tequila, on March 15, 2025, he purchased Casamigos Blanco, and on May 2, 2025, he purchased Don Julio Reposado.[11]

---

[8] The tequila was purchased from *Total Wine & More*, 950 Springfield Rd., Union, NJ 07083, and Plaintiff Mishulovin paid $44.09 for Casamigos Blanco (two 750 ml bottles), $48.09 for Casamigos Reposado (two 750 ml bottles), $53.99 for Casamigos Anejo (750 ml bottle). He again purchased Casamigos Blanco for the same price on August 21, 2024.

[9] The tequila was purchased from *Total Wine & More*, 2100 NJ-38 Suite 8A, Cherry Hill Township, NJ 08002, and Plaintiff Pusateri paid $89.99 for Don Julio 1942 (375 ml bottle).

[10] Tequila was purchased from *Southern Glazer's of FL*, including bottles of Casamigos Anejo ($65.35), Blanco ($48.45), Reposado ($117.70), and Don Julio Tequila 1942 ($280.20) on May 12, 2025, and bottles of Casamigos Reposado ($347.40) on May 14, 2025.

[11] The tequila was purchased from *ABC Fine Winde & Spirits*, Winter Park, FL for $58.49, $37.99, and $44.99 respectively.

### c. Barry Wilhelm.

17.     Plaintiff Barry Wilhelm is a resident of Florida. He has purchased Diageo's Product in Florida on numerous occasions. For example, on September 1, 2024, he purchased bottles of Don Julio Blanco tequila.[12]

### d. Shannon Wilhelm.

18.     Plaintiff Shannon Wilhelm is a resident of Florida. She has purchased Diageo's Product in Florida on numerous occasions. For example, on August 28, 2024, she purchased bottles of Don Julio Blanco tequila.[13]

## 4. Colorado Plaintiffs

### a. Tracy Cole.

19.     Plaintiff Tracy Cole is a resident of Colorado. She has purchased Diageo's Product in Colorado on numerous occasions. For example, beginning in September 2023, she purchased bottles of Don Julio Blanco 70 Cristalino tequila (750 ml) at least 18 times and Don Julio Blanco tequila (1.75L) at least nine times.[14]

---

[12] The tequila was purchased from *ABC Fine Winde & Spirits*, Bradenton, FL for $566.94.

[13] The tequila was purchased from *Normans Liquors & Fine Wines*, Bradenton, FL for $679.92.

[14] The tequila was purchased from *Total Wine*, 3905 E. Evans Ave., Denver, CO. She bought Don Julio Blanco 70 Cristalino tequila (750 ml) on 9/29/23 ($58.29); 12/30/23 ($59.99); 01/23/24 ($59.99); 02/08/24 ($59.99); 03/13/24 ($59.99); 04/26/24 ($53.99); 05/02/24 ($69.99); 05/14/24 ($51.79); 05/24/24 ($53.99); 06/04/24 ($52.87); 06/23/24 ($52.87); 07/17/24 ($53.99); 08/25/24 ($53.99); 10/11/24 ($53.23); 11/09/24 ($53.99); 12/11/24 ($53.26); 02/11/25 ($33.99); 05/08/25 ($53.99). She bought Don Julio Blanco (1.75L) on 06/04/24 ($78.34); 06/23/24 ($78.34); 07/17/24 ($79.99); 08/25/24 ($79.99); 10/11/24 ($78.85); 11/09/24 ($79.99); 12/11/24 ($77.93); 02/11/25 ($73.99); 05/08/25 ($73.99).

### b. Nelson Njoroge.

20. Plaintiff Nelson Njoroge is a resident of Colorado. He has purchased Diageo's Product in Colorado on numerous occasions. For example, on August 2, 2024 and October 25, 2024, he purchased bottles of Don Julio Blanco tequila.[15]

### 5. Maryland Plaintiffs

#### a. Nelson Njoroge.

21. Plaintiff Nelson Njoroge is a resident of Colorado who also purchased Diageo's Product in Maryland. For example, on October 11, 2024, he purchased a bottle of Don Julio Blanco tequila.[16]

#### b. Antoine Doxon.

22. Plaintiff Antoine Doxon is a resident of New York who also purchased Diageo's Product in Maryland. For example, on August 22, 2024, he purchased Don Julio 1942 and Don Julio Rosado in Reisterstown, Maryland.[17]

### 6. Pennsylvania Plaintiff

#### a. Antoine Doxon.

23. Plaintiff Antoine Doxon is a resident of New York who also purchased Diageo's Product in Pennsylvania. For example, on June 13, 2024, he purchased two bottles of Don Julio 1942 tequila in Pennsylvania.[18] He has also purchased Diageo's Product from stores in Chambersburg, PA, within the applicable statute of limitations period.

---

[15] The tequila bottles were purchased from *Total Wine & More*, in Centennial and Denver, CO for $38.97, $77.96, and $79.99.

[16] The tequila was purchased from *Total Wine & More*, Laurel, MD for $44.99.

[17] The tequila was purchased from *Reisterstown Wine & Spirits* for $236.51.

[18] The tequila was purchased from *CNS Wine & Spirits* for $190.79.

### 7. Illinois Plaintiffs

#### a. Tiease Holmes.

24.     Plaintiff Tiease Holmes is a resident of Illinois. She has purchased Diageo's Product in Illinois on numerous occasions. For example, in 2025, she purchased Don Julio Reposado on February 1, February 27, March 15, and May 6 in Dolton and Calumet Park, Illinois.[19]

#### b. Dyonnesha Woolfolk.

25.     Plaintiff Dyonnesha Woolfolk is a resident of Illinois. She has purchased Diageo's Product in Illinois on numerous occasions. For example, she purchased Don Julio Reposado tequila on June 14, 2025, in South Chicago Heights, Illinois.[20]

### 8. Texas Plaintiffs

#### a. Troy Reece.

26.     Plaintiff Troy Reece is a resident of Texas. He has purchased Diageo's Product in Texas on numerous occasions. For example, on or around May 2025, he purchased Casamigos Reposado, Don Julio Anejo, and Don Julio Blanco.[21]

#### b. Nelson Njoroge.

27.     Plaintiff Nelson Njoroge is a resident of Colorado who also purchased Diageo's Product in Texas. For example, on March 2, 2025, he purchased a bottle of Don Julio Blanco and

---

[19] The tequila was purchased from *Moonlight Food & Liquor* and *Marshfield Wine & Spirit* and each bottle was $45.00.

[20] The tequila was purchased from *Tony's Liquor Store* for $39.99.

[21] The tequila was purchased from *Spec's Wines, Spirits & Finer Foods* in Houston, Texas.

on July 19, 2025, he purchased bottles of Don Julio Reposado and Don Julio Blanco tequila in Houston, Texas.[22]

**B.     Defendant Diageo North America, Inc.**

28.     Diageo is a global leader in the alcoholic beverage industry with brands across the spirits and beer markets worldwide. It is headquartered in New York and incorporated in Connecticut. It sells Casamigos, one of the world's best-selling and fastest-growing tequila brands.[23] Diageo acquired Casamigos in 2017 in a deal worth up to US $1 billion after the brand was founded by actor George Clooney, Rande Gerber, and Mike Meldman in 2013.[24] In a press release, Diageo boasted that Casamigos was "the fastest growing super-premium tequila brand in the US."[25] In 2023, data indicated that Casamigos was the world's fourth biggest-selling tequila with 3 million cases sold.[26] According to the U.S. Distilled Spirits Council, the U.S. imported $3.8 billion of tequila in the first nine months of 2024, which is up 13% from the same period a year earlier and more than whiskey, gin, rum, brandy, and vodka imports combined.[27]

29.     Diageo also sells and markets its Don Julio tequila brand as a "luxury premium tequila." In 2023, it was the second biggest-selling tequila with 3.4 million cases sold.[28]

---

[22] The tequila was purchased from *Total Wine & More* for $62.00, $41.99, and $39.99 respectively.

[23] Brands Report 2025: Tequila (Jan. 13, 2025), https://drinksint.com/news/fullstory.php/aid/11552/Brands_Report_2025:_Tequila.html.

[24] Nicola Carruthers, *Diageo goes 'back to basics' with Casamigos*, The Spirits Business (Feb. 6, 2025), https://www.thespiritsbusiness.com/2025/02/diageo-goes-back-to-basics-with-casamigos/.

[25] https://www.diageo.com/en/news-and-media/press-releases/2017/diageo-completes-acquisition-of-super-premium-tequila-casamigos.

[26] *Id*.

[27] Jose Luis Osorio & Sarah Morland*, Mexican tequila makers fret as US tariffs threaten their business*, REUTERS (Feb. 17, 2025), https://www.reuters.com/world/americas/mexican-tequila-makers-fret-us-tariffs-threaten-their-business-2025-02-17.

[28] Carruthers, *supra* note 24.

## IV. FACTUAL ALLEGATIONS

**A. The tequila spirit sector is a billion-dollar category of consumer alcohol sales.**

30. According to Diageo's CEO, the tequila market in the United States has in recent years grown at plus-6%.[29] Consumers are attracted to tequila because of its versatility as a mixer, its supposed authentic production, cultural appreciation, and boost from celebrity endorsements such as actor George Clooney.

**B. Numerous news reports detail widespread tequila adulteration allegations.**

31. Multiple sources indicate that there is significant adulteration of tequila exported from Mexico. For example, in January 2025, the Mexican business media platform *Lider Empresarial* reported that thousands of agave growers in Mexico angrily demonstrated against major tequila companies over the use of non-agave ingredients. A legal representative of the Mexican Agave Council (Consejo Mexicano del Agave or CMXDA), an organization that advocates for agave farmers, disclosed that tequila was being adulterated with cane alcohol.[30]

32. Similarly, the authoritative website *Mezcalistas* reported that agave farmers protested the lack of tequila industry regulatory compliance while holding a banner stating: "NO MORE ADULTERATED TEQUILA! TEQUILA MUST BE 100% AGAVE!"[31] One organizer declared: "We are here to ensure that they're not going to keep mixing cane alcohol and other substances that aren't agave!"[32] The agave farmers claimed that tequila is supposed to be

---

[29] *Id.*

[30] Maria Hernandez Figueroa, *Agaveros exigen "eliminar monopolies" en la Industria Tequilera*, Lider Empresarial (Jan. 10, 2025), https://www.liderempresarial.com/agaveros-exigen-eliminar-monopolios-en-la-industria-tequilera/.

[31] Felisa Rogers, *Is that really tequila you're buying? Allegations of corruption raise serious questions*, Mezcalistas (Jan. 13, 2025), https://www.mezcalistas.com/tequila-industry-corruption/.

[32] *Id.*

regulated by Mexico's Tequila Regulatory Council ("CRT") but that the CRT is a nonprofit organization that is heavily influenced and controlled by "big tequila."[33]

33.     Reports indicate that "CRT officials have been turning a profit by allowing some tequila corporations to mix cane or corn alcohol into tequila that's then labeled as 100 percent agave."[34] This has been confirmed by sending "samples of tequila for laboratory analysis" and observing "trucks delivering cane alcohol to distilleries."[35]

34.     Tequila production requires the cultivation, fermentation, and distillation of Blue Weber agave. Because this type of agave takes five to ten years to mature for harvest, it "creates ongoing tension in the industry, as well as the temptation to cut corners."[36]

35.     According to Remberto Galván Cabrera, a spokesperson for the Mexican Agave Council, "when agave prices were high, large tequila companies began mixing cane alcohol into tequila that they sold as 100% agave."[37] These practices continue today.[38]

36.     The Additive Free Alliance ("AFA"), an organization dedicated to tequila industry transparency, has shown that Nuclear Magnetic Resonance ("NMR") testing can "confirm if tequila has been adulterated with cane alcohol."[39]

37.     It has confirmed through testing that Diageo's Product purchased by Plaintiffs was not 100% agave spirits and, as described below, did not meet the regulatory requirements in either the United States or Mexico.

---

[33] *Id.*

[34] *Id.*

[35] *Id.*

[36] *Id.*

[37] Felisa Rogers, *Agave farmers say they will no longer play nice*, Mezcalistas (Jan. 15, 2025), https://www.mezcalistas.com/breaking-tequila-news/.

[38] *Id.*

[39] *Is that really tequila you're buying?*, supra note 31.

38.     Plaintiffs' counsel began investigating Diageo's adulterated tequila in 2024 after initial laboratory testing arranged through the AFA indicated Diageo's tequila was adulterated. Plaintiffs' counsel then arranged for further testing of Diageo's Product, including Casamigos and Don Julio, purchased directly by some plaintiffs. Additional testing by AFA's independently contracted laboratory again confirmed that Diageo tequila was adulterated, and subsequent independent testing has continued to yield the same results.

39.     The seriousness of Diageo's misconduct cannot be overstated. By falsely labeling mass-produced tequila as "100% agave," Diageo deceives consumers, undermines legitimate producers, harms agave farmers, and distorts the market for authentic tequila.

40.     To verify the falsity of Diageo's claims, the AFA and Plaintiffs' counsel commissioned laboratory testing of Diageo's flagship tequilas using a scientifically validated method: carbon isotope ratio analysis. This technique, which is widely accepted in food chemistry, identifies the plant origin of ethanol in spirits and detects adulteration.

41.     To determine whether tequila labeled "100% agave" derives its alcohol solely from agave sugars, scientists measure the natural carbon fingerprint of the ethanol in the spirit. This fingerprint—known as a stable carbon isotope ratio ($\delta^{13}C$)— identifies the plant source of the sugars used in fermentation.

42.     Specifically, researchers analyze the carbon composition at two parts of the ethanol molecule: the methylene group ($CH_2$) and the methyl group ($CH_3$). Ethanol made from Blue Weber agave, a CAM[40] plant, shows a distinct isotope signature compared to cheaper feedstocks like corn or sugarcane, which are $C_4$ plants.

_____

[40] CAM species (like Blue Weber agave) are plants that use a water-efficient form of photosynthesis. Unlike most plants, they open their stomata (the pores on their leaves) at night

43.     A foundational 2010 study confirmed this distinction.[41] Ethanol made from $C_4$ plants such as corn and sugarcane consistently shows $\delta^{13}C(CH_2)$ values near –13.5‰.[42] In contrast, agave-derived ethanol falls within a range of –7.0‰ to –9.0‰.[43] The $CH_3$ position offers further separation: $C_4$-derived ethanol typically measures around –12.0‰, while agave-derived ethanol shows more negative values, between –15.0‰ and –17.0‰.[44] Ethanol from $C_3$ plants like sugar beets registers even lower, further validating the method's ability to identify ethanol sources.[45]

44.     Building on that foundation, a 2021 peer-reviewed study refined and validated an NMR technique that measures $\delta^{13}C$ content at both the $CH_2$ and $CH_3$ positions.[46] These results confirmed the same diagnostic patterns: ethanol from pure agave sources consistently fell within the expected $\delta^{13}C$ ranges, while ethanol from $C_4$ plants, like cane and corn, displayed more negative values.[47] The study established precise benchmarks—$CH_2$ values below –10.0‰ are likely indicative of non-agave origin.[48]

45.     Together, these studies provide a scientifically validated, peer-reviewed framework for determining whether ethanol in a tequila sample truly comes from agave.

instead of during the day. This allows them to absorb carbon dioxide in cooler, more humid conditions, reducing water loss in the hot sun.

[41] *See* Freddy Thomas, et al., Improved Characterization of the Botanical Origin of Sugar by Carbon-13 SNIF-NMR Applied to Ethanol, 58 J. AGRIC. FOOD CHEM. 11580, 11580-81 (2010).

[42] *Id.* at 11583.

[43] *Id.*

[44] *Id.*

[45] *Id.*

[46] Vincent Portaluri, et al., Authentication of Agave Products through Isotopic Intramolecular $^{13}C$ Content of Ethanol: Optimization and Validation of $^{13}C$ Quantitative NMR Methodology, 1 ACS FOOD SCI. TECHNOL. 1316, 1316-17 (2021).

[47] *Id.* at 1320.

[48] *Id.*

46.     Using that framework, Plaintiffs' counsel commissioned laboratory analysis applying validated carbon isotope testing to five Diageo tequila products labeled "100% Agave" that were purchased by some of the Plaintiffs in this case: Casamigos Blanco, Casamigos Reposado, Casamigos Añejo, Don Julio Reposado, and Don Julio 1942 Añejo.

47.     The tested samples yielded the following results:

**Casamigos Blanco**: $\delta^{13}C = -11.0‰$ (Estimated agave-derived ethanol: **45%**)

**Casamigos Reposado**: $\delta^{13}C = -12.2‰$ (Estimated agave-derived ethanol: **24%**)

**Casamigos Añejo**: $\delta^{13}C = -13.4‰$ (Estimated agave-derived ethanol: **2%**)

**Don Julio Reposado**: $\delta^{13}C = -10.5‰$ (Estimated agave-derived ethanol: **55%**)

**Don Julio 1942 Añejo**: $\delta^{13}C = -11.2‰$ (Estimated agave-derived ethanol: **42%**)

None of the tested samples came close to the threshold for ethanol derived entirely from agave sugars. All five showed that the alcohol in these products came from non-agave sources such as corn or sugarcane.

48.     These findings directly contradict the prominent "100% Agave" labels on Diageo's tequila and confirm that its representations are materially false and misleading.

49.     Indeed, the independent laboratory reports for all the samples concluded that the isotopic parameters measured did not align with the laboratory's database of authentic 100% agave tequila.

50.     These test results implicate all of Diageo's tequilas because they show that its entire tequila line relies on the same adulterated base spirit.

51.     Plaintiffs bring claims on behalf of themselves and all other consumers in the states where they purchased Casamigos or Don Julio tequila labeled "100% Agave" or its equivalent.

52. Each Plaintiff saw the "100% Agave" label (or its equivalent) on Diageo's tequila bottles and considered it material to their purchase decisions.

53. Plaintiffs purchased Diageo's Product (Casamigos and Don Julio tequila) and would not have paid the premium prices absent Diageo's false and misleading statements and omissions.[49]

54. Plaintiffs intend to purchase Diageo's Product again when they can do so with the assurance that the representations of Diageo's Product are accurate.

## C.  Regulatory Background

55. Tequila is regulated in the United States by the U.S. Department of the Treasury, Alcohol and Tobacco Tax and Trade Bureau ("TTB") pursuant to 27 C.F.R. Part 5, which regulates the labeling and advertising of distilled spirits.

56. Distilled spirits made from agave plants may contain added flavoring or coloring materials only if they "do not total more than 2.5 percent by volume of the finished product." 27 C.F.R. § 5.155.

57. An agave spirit may be classified as "Tequila" only if it is "made in Mexico, in compliance with the laws and regulations of Mexico governing the manufacture of Tequila for consumption in that country." 27 C.F.R. § 5.148.

---

[49] Plaintiffs intend to utilize expert analysis to calculate the price premium that plaintiffs paid for Defendant's supposed 100% agave tequila compared to an alternative tequila that was not 100% agave. An estimate may be possible by comparing tequila products from other tequila companies. For example, *Jose Cuervo* sells a 750 ml bottle of Cuervo Tradicional Blanco 100% Blue Weber agave tequila for $26.99 (https://cuervo.com/products/tradicional-blanco/) and a 750 ml bottle of Jose Cuervo Especial Silver tequila (mixto) for $20.99 (https://cuervo.com/products/especial-silver/).

58.     Mexico regulates tequila production through the Tequila Regulatory Council ("CRT"), which is the Conformity Assessment Body for NOM-006-SCFl-2012-Alcoholic Beverages-Tequila-Specifications ("Tequila NOM").[50]

59.     Section 6.1.1.1 of the Tequila NOM provides that the addition of sugar-based syrups "must not be more than 1% in relation to the total Tequila weight before it is bottled."

60.     Section 5.1.1 of the Tequila NOM provides that a product labeled "100% agave [azul]" or "100% de agave" is "a product whose fermentation may not be enhanced with sugars other than those obtained from the tequilana weber blue variety Agave grown in the territory specified in the Declaration [i.e., Mexican territories authorized for the growing of Blue Weber agave]."

61.     The Tequila NOM further states in section 5.1.2 that only tequila that is not 100% blue variety agave may have "other sugars in a proportion not to exceed 49% of total reducing sugars expressed in units of mass. This maximum enhancement of up to 49% of total reducing sugars expressed in units of mass may not be done with sugars from any species of Agave." However, "[t]he 51% of total reducing sugars expressed in units of mass may only be enhanced with *tequilana weber blue variety* agave . . . ." *See also* NOM section 6.3 (only authorizing tequila that is not 100% agave azul from being "enhanced with other sugars in the fermentation process").

62.     Section 6.5.2.1 of the Tequila NOM imposes strict documentation requirements to ensure tequila "has not been adulterated in the manufacturing stages of its production."

---

[50] https://www.crt.org.mx/wp-content/uploads/2024/01/NOM-006-SCFI-2012%20-%20INGLES.pdf

63.     Agave spirits that fail to provide accurate information in interstate commerce violate the Federal Alcohol Administration Act ("FAAA"), 27 U.S.C. § 205(e), which requires bottles to disclose the "identity and quality of the products, [and] the alcoholic content thereof."

64.     New York incorporates federal legal standards in its Alcoholic Beverage Control ("ABC") law, ABC § 107-a(5), which requires labels consistent with TTB regulations and prohibits labels with "any statement that is false or untrue in any particular manner." *See also* 9 NYCRR § 84.1 (adopting federal regulations and prohibiting labels that "would tend to deceive the consumer").

65.     New Jersey law likewise incorporates federal standards and provides that "[a]ny alcoholic beverage . . . shall . . . be deemed prima facie an illicit beverage where the container . . . bears a label which does not truly describe its contents." N.J. Stat. Ann. § 33:1-88; *see also* N.J. Admin. Code § 13:2-27.1 (adopting federal regulations in 27 C.F.R. Part 5 for the labeling and advertising of distilled spirits).

66.     Other U.S. states impose similar standards that govern Diageo's conduct and prohibit the sale of falsely labeled or adulterated tequila.

## V.     TOLLING

67.     Plaintiffs incorporate by reference and reallege the foregoing allegations.

68.     The statutes of limitations applicable to Plaintiffs' claims were tolled by Diageo's conduct and by Plaintiffs' and Class Members' delayed discovery of their claims.

69.     As alleged in detail above, throughout the relevant time period, Diageo actively concealed and failed to disclose that Diageo Products, all of which are marketed as "100% agave," are adulterated with non-agave alcohol. This concealment prevented Plaintiffs and Class Members from learning the true composition of the Diageo Products.

70.     Diageo knew that its Diageo Products labeled "100% agave" were adulterated with non-agave alcohol. Nevertheless, it knowingly engaged in misleading marketing and advertising campaigns portraying these products as derived solely from the Blue Weber agave and compliant with Mexican legal standards for "100% agave" tequila.

71.     Because Diageo had superior knowledge about the production and adulteration of Diageo Products, it had a duty to disclose the true nature and quality of those products to Plaintiffs and Class Members.

72.     Diageo also knew that disclosing that Diageo Products are adulterated with non-agave alcohol would reduce or eliminate sales of Diageo Products.

73.     Had Diageo disclosed the truth, Plaintiffs and Class Members would have relied on those disclosures and would not have purchased Diageo Products, or would have paid less for them and not paid a premium.

74.     Diageo intended for Plaintiffs and Class Members to rely on its misrepresentations, omissions, and concealment regarding the Diageo Products by actively concealing that the Diageo Products are adulterated with non-agave alcohol. Plaintiffs and Class Members justifiably relied on the misrepresentations, omissions, and concealment to their detriment.

75.     Given the highly technical nature of carbon isotope testing and the specialized knowledge required to detect adulteration, Plaintiffs did not discover Diageo's unlawful conduct until after information about it became public in early 2025.

76.     At the time of purchase, Plaintiffs and Class Members could not have discovered, through reasonable diligence, that the Diageo Products were adulterated and Diageo had concealed that fact.

77.     Accordingly, all applicable statutes of limitations are tolled under the discovery

rule as to claims that the Diageo Products were adulterated with non-agave alcohol.

## VI.     CLASS ACTION ALLEGATIONS

78.     Plaintiffs bring this action on behalf of themselves and as a class action pursuant

to the provisions of Rule 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure on

behalf of the following classes:[51]

    (a)    **New York Class:** All persons who, during the applicable statutes of
limitations to the present, purchased Diageo's Product in New York.

    (b)    **New Jersey Class:** All persons who, during the applicable statutes of
limitations to the present, purchased Diageo's Product in New Jersey.

    (c)    **Florida Class:** All persons who, during the applicable statutes of
limitations to the present, purchased Diageo's Product in Florida.

    (d)    **Colorado Class:** All persons who, during the applicable statutes of
limitations to the present, purchased Diageo's Product in Colorado.

    (e)    **Maryland Class:** All persons who, during the applicable statutes of
limitations to the present, purchased Diageo's Product in Maryland.

    (f)    **Pennsylvania Class:** All persons who, during the applicable statutes of
limitations to the present, purchased Diageo's Product in Pennsylvania.

    (g)    **Illinois Class:** All persons who, during the applicable statutes of
limitations to the present, purchased Diageo's Product in Illinois.

    (h)    **Texas Class:** All persons who, during the applicable statutes of limitations
to the present, purchased Diageo's Product in Texas.

79.     Excluded from the Class are Diageo and its officers, directors, management,

employees, subsidiaries, or affiliates. Excluded as well are the district judge or magistrate judge

to whom this case is assigned, as well as those judges' immediate family members, judicial

---

[51] Collectively, the "Class," unless otherwise noted.

officers and their personnel, and all governmental entities. Plaintiffs reserve the right to revise the Class definition based upon information learned through discovery.

80.  Certification of Plaintiffs' claims for classwide treatment is appropriate because Plaintiffs can prove the elements of their claims on a classwide basis using the same evidence as would be utilized to prove those elements in individual actions alleging the same claims.

81.  This action has been brought and may be properly maintained on behalf of each of the Classes proposed herein under Federal Rule of Civil Procedure 23.

82.  <u>Numerosity</u>. Federal Rule of Civil Procedure 23(a)(1): The members of the Class are so numerous and geographically dispersed that individual joinder of all Class Members is impracticable. Plaintiffs are informed Diageo sells millions of cases of tequila each year, including thousands of bottles in each relevant state. Class Members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods. These methods may include U.S. Mail, email, text messages, social media, internet postings, and/or published notice.

83.  Class Members may also be notified of this case because Diageo's websites direct consumers to online third-party retailers, which maintain purchase and contact records of Class Members.

84.  <u>Commonality and Predominance.</u> Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3): This action involves common questions of law and fact, which predominate over any questions affecting individual Class Members, including, without limitation:

(a)  Whether Diageo engaged in the conduct alleged herein;

(b)  Whether Diageo designed, advertised, marketed, distributed, sold, or otherwise placed adulterated tequila into the stream of commerce in the United States;

(c)     Whether Diageo sources its tequila from suppliers that provide adulterated tequila;

(d)     Whether Diageo made specific claims to consumers that it sold or distributed agave spirits that were "Tequila 100% Agave Azul," or "100% de Agave," or "100% BLUE WEBER AGAVE";

(e)     Whether Diageo knew or suspected that it sold adulterated tequila and, if so, how long Diageo has known or suspected this issue;

(f)     Whether Diageo's conduct violates consumer protection statutes and other laws as asserted herein;

(g)     Whether Diageo knew or should have known of adulterated tequila issues inherent in its supply chain;

(h)     Whether Plaintiffs and the other Class Members overpaid for tequila from Diageo as a result of the allegations herein;

(i)     Whether Plaintiffs and the other Class Members are entitled to equitable relief; and

(j)     Whether Plaintiffs and the other Class Members are entitled to damages and other monetary relief and, if so, in what amount.

85.     <u>Typicality.</u> Federal Rule of Civil Procedure 23(a)(3): Plaintiffs' claims are typical of the other Class Members' claims because all Class Members were injured in the same manner by Diageo's wrongful conduct as described above.

86.     <u>Adequacy.</u> Federal Rule of Civil Procedure 23(a)(4): Plaintiffs are adequate Class representatives because their interests do not conflict with the interests of the other members of the Classes each respectively seeks to represent; Plaintiffs have retained counsel competent and

experienced in complex class action litigation; and Plaintiffs intend to prosecute this action vigorously. The Class's interests will be fairly and adequately protected by Plaintiffs and their counsel.

87. <u>Declaratory and Injunctive Relief.</u> Federal Rule of Civil Procedure 23(b)(2): Diageo has acted or refused to act on grounds generally applicable to Plaintiffs and Class Members, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to the Class as a whole.

88. <u>Superiority.</u> Federal Rule of Civil Procedure 23(b)(3): A class action is superior to any other available means for the fair and efficient adjudication of this controversy and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiffs and the other Class Members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Diageo, so it would be impracticable for Class Members to individually seek redress for Diageo's wrongful conduct. Even if Class Members could afford individual litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments, and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

# VII.   CAUSES OF ACTION

## FIRST CLAIM FOR RELIEF

### VIOLATIONS OF NEW YORK'S DECEPTIVE ACTS AND PRACTICES LAW
#### (N.Y. Gen. Bus. Law § 349 on Behalf of the New York Class)

89.     Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this complaint.

90.     This claim is brought by the New York Plaintiffs individually and on behalf of the New York Class for purchases that occurred in New York.

91.     The New York General Business Law ("GBL") § 349 prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce."

92.     Plaintiffs and the New York Class members are "persons" within the meaning of N.Y. Gen. Bus. Law § 349(h).

93.     Diageo is a "person," "firm," "corporation," or "association" within the meaning of N.Y. Gen. Bus. Law § 349.

94.     In its advertising and sale of goods throughout New York, Diageo conducts business and trade within the meaning of GBL § 349.

95.     Diageo's deceptive acts and practices consisted of selling spirits that were falsely labeled as "Tequila 100% Agave Azul," or "100% de Agave," or "100% BLUE WEBER AGAVE."

96.     Diageo's deceptive acts and practices were directed at consumers and intended to or did mislead consumers that purchased Diageo's adulterated tequila.

97.     Diageo's sale of adulterated tequila was consumer-oriented because it had a broad impact on consumers at large, instead of only affecting a single transaction or the Plaintiffs.

98. Diageo's sale of adulterated tequila was deceptive in a material way—that is, that a reasonable consumer acting reasonably in the Plaintiffs' circumstances would have been misled by Diageo's statements and those of its agents that it sold "Tequila 100% Agave Azul," or "100% de Agave," or "100% BLUE WEBER AGAVE."

99. Plaintiffs saw or heard these statements before they came into possession of the products they purchased from Diageo.

100. Diageo's statements and those of its agents permitted it to charge a premium price for its Casamigos and Don Julio tequila, even though these spirits were not "Tequila 100% Agave Azul," or "100% de Agave," or "100% BLUE WEBER AGAVE."

101. Diageo's false statements actually caused the Plaintiffs and other members of the New York class to pay more than if Diageo's Products were truthfully labeled.

102. Plaintiffs' injuries were a direct, actual injury beyond the deception itself.

103. Because Diageo's deceptive acts or practices in the conduct of its business, trade or commerce was willful and knowing conduct and caused injury to Plaintiffs, Plaintiffs seek recovery of actual damages or $50, whichever is greater; discretionary treble damages up to $1,000; reasonable attorneys' fees and costs; an order enjoining Diageo's deceptive conduct; and any other just and proper relief available under GBL § 349.

**SECOND CLAIM FOR RELIEF**

**VIOLATION OF NEW YORK'S FALSE ADVERTISING LAW**
**(N.Y. Gen. Bus. Law § 350 on Behalf of the New York Class)**

104. Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this complaint.

105. This claim is brought by the New York Plaintiffs individually and on behalf of the New York Class for purchases that occurred in New York.

106. The New York General Business Law ("GBL") § 350 prohibits "[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state."

107. False advertising means "advertising, including labeling, of a commodity . . . if such advertising is misleading in a material respect." GBL § 350-A.

108. Plaintiffs and the New York Class members are "persons" within the meaning of GBL § 350-E.

109. Diageo's false advertising consisted of selling and marketing spirits that were falsely labeled or marketed as "Tequila 100% Agave Azul," or "100% de Agave," or "100% BLUE WEBER AGAVE."

110. Diageo's false advertising was directed at consumers and intended to or did mislead consumers that purchased Diageo's adulterated tequila.

111. Diageo's sale of adulterated tequila was consumer-oriented because it had a broad impact on consumers at large, instead of only affecting a single transaction or the Plaintiffs.

112. Diageo's sale of adulterated tequila was deceptive in a material way—that is, that a reasonable consumer acting reasonably in the Plaintiffs' circumstances would have been misled by Diageo's statements and those of its agents that it sold "Tequila 100% Agave Azul," or "100% de Agave," or "100% BLUE WEBER AGAVE."

113. Plaintiffs saw or heard these false tequila descriptions before they came into possession of the products they purchased from Diageo.

114. Diageo's statements and those of its agents permitted it to charge a premium price for its Casamigos and Don Julio tequila, even though these spirits were not "Tequila 100% Agave Azul," or "100% de Agave," or "100% BLUE WEBER AGAVE."

115.     Diageo's false statements actually caused the Plaintiffs and other members of the New York class to pay more than if Diageo's Products were truthfully labeled and advertised.

116.     Plaintiffs' injuries were a direct, actual injury beyond the deception itself.

117.     Plaintiffs were also injured by reason of Diageo's false advertising and seek to enjoin Diageo's unlawful acts and practices and to recover their actual damages or $500 dollars, whichever is greater, and their attorney's fees. GBL § 350-E.

118.     If this Court finds that Diageo willfully or knowingly engaged in false advertising, Plaintiffs seek three times their actual damages or $10,000. GBL § 350-E.

## THIRD CLAIM FOR RELIEF

### VIOLATION OF THE NEW JERSEY CONSUMER FRAUD ACT
### (N.J. Stat. Ann. § 56:8–1, *et seq.*, on Behalf of the New Jersey Class)

119.     Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this complaint.

120.     This claim is brought by the New Jersey Plaintiffs individually and on behalf of the New Jersey Class for purchases that occurred in New Jersey.

121.     Plaintiffs and the New Jersey Class members are "persons" within the meaning of N.J. Stat. Ann. § 56:8–19.

122.     Diageo made untrue, false, deceptive and/or misleading statements in connection with the advertising and marketing of its Products in violation of N.J. Stat. Ann. § 56:8-2.

123.     Diageo made representations and statements (by omission and commission) that led reasonable consumers to believe that they were purchasing agave spirits that were "Tequila 100% Agave Azul," or "100% de Agave," or "100% BLUE WEBER AGAVE." Diageo deceptively failed to inform Plaintiffs, and those similarly situated, that its Products did not

actually satisfy the requirements to be labeled "Tequila 100% Agave Azul" or any related assertion.

124.    Plaintiffs and those similarly situated relied to their detriment on Diageo's false, misleading, and deceptive advertising and marketing practices, including, without limitation, the misrepresentations and omissions noted above. If Plaintiffs and those similarly situated had been adequately informed and not deceived by Diageo, they would have acted differently by, without limitation, refraining from purchasing Diageo's Products, paying less for them or purchasing smaller quantities.

125.    Diageo's acts and omissions are likely to deceive the general public. Diageo engaged in these false, misleading, and deceptive advertising and marketing practices to increase its profits. Accordingly, Diageo has engaged in false advertising, as defined and prohibited by section 56:8-1, *et seq.*, of the New Jersey Consumer Fraud Act.

126.    Plaintiffs seek, on behalf of those similarly situated, full restitution of monies, as necessary and according to proof, to restore any and all monies acquired by Diageo from Plaintiffs, the general public, or those similarly situated by means of the false, misleading, and deceptive advertising and marketing practices complained of herein, plus interest thereon.

127.    Plaintiffs seek, on behalf of those similarly situated, an injunction to prohibit Diageo from continuing to engage in the false, misleading, and deceptive advertising and marketing practices complained of herein. The acts complained of herein occurred, at least in part, within four (4) years preceding the filing of this Complaint.

128.    Plaintiffs and those similarly situated are further entitled to and do seek both a declaration that the above-described practices constitute false, misleading, and deceptive advertising, and injunctive relief restraining Diageo from engaging in any such advertising and

marketing practices in the future. In the absence of such equitable relief, Diageo could renew the misconduct alleged herein, and such misconduct by Diageo, unless and until enjoined and restrained by order of this Court, will continue to cause injury in fact to Plaintiffs and the general public and the loss of money and property in that Diageo will continue to violate the laws of New Jersey. This expectation of future violations will require current and future customers to repeatedly and continuously seek legal redress in order to recover monies paid to Diageo to which Diageo is not entitled. Plaintiffs and those similarly situated have no other adequate remedy at law to ensure future compliance with the New Jersey Consumer Fraud Act alleged to have been violated herein.

129.     As a direct and proximate result of such actions, Plaintiffs and the other members of the Class have suffered, and continue to suffer, injury in fact and have lost money and/or property as a result of such false, deceptive and misleading advertising in an amount which will be proven at trial, but which is in excess of the jurisdictional minimum of this Court.

## FOURTH CLAIM FOR RELIEF

## VIOLATION OF THE FLORIDA DECEPTIVE & UNFAIR TRADE PRACTICES ACT
### (Fla. Stat. § 501.201, *et seq.*, on Behalf of the Florida Class)

130.     Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this complaint.

131.     This claim is brought by the Florida Plaintiffs individually and on behalf of the Florida Class for purchases that occurred in Florida.

132.     The Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") prohibits "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.204(1).

133.    Plaintiffs and the Florida Class members are "consumers" within the meaning of the FDUTPA, Fla. Stat. § 501.203(7).

134.    Diageo engaged in "trade or commerce" within the meaning of Fla. Stat. § 501.203(8).

135.    Diageo's deceptive acts and practices were directed at consumers and intended to or did mislead consumers that purchased Diageo's adulterated tequila.

136.    Diageo's sale of adulterated tequila was consumer-oriented because it had a broad impact on consumers at large, instead of only affecting a single transaction or the Plaintiffs.

137.    Diageo's sale of adulterated tequila was deceptive in a material way—that is, that a reasonable consumer acting reasonably in the Plaintiffs' circumstances would have been misled by Diageo's statements and those of its agents that it sold "Tequila 100% Agave Azul," or "100% de Agave," or "100% BLUE WEBER AGAVE."

138.    Plaintiffs saw or heard these statements before they came into possession of the products they purchased from Diageo.

139.    Diageo's statements and those of its agents permitted it to charge a premium price for its Casamigos and Don Julio tequila, even though these spirits were not "Tequila 100% Agave Azul," or "100% de Agave," or "100% BLUE WEBER AGAVE."

140.    Diageo's false statements actually caused Plaintiffs and other members of the Florida class to pay more than if Diageo's Products were truthfully labeled.

141.    Plaintiffs' injuries were a direct, actual injury beyond the deception itself.

142.    Plaintiffs and Florida Class members are entitled to recover their actual damages under Fla. Stat. § 501.211(2) and attorneys' fees under Fla. Stat. § 501.2105(1).

143.     Plaintiffs also seek an order enjoining Diageo's unfair and/or deceptive acts or practices, damages, and attorneys' fees, and any other just and proper relief available under the FDUTPA.

## FIFTH CLAIM FOR RELIEF

### VIOLATION OF THE COLORADO CONSUMER PROTECTION ACT
(Colo. Rev. Stat. § 6-1-101, *et seq.*, on Behalf of the Colorado Class)

144.     Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this complaint.

145.     This claim is brought by the Colorado Plaintiffs individually and on behalf of the Colorado Class for purchases that occurred in Colorado.

146.     The Colorado Consumer Protection Act ("Colorado CPA") prohibits deceptive practices in the course of a person's business including, but not limited to, "mak[ing] false or misleading statements of fact concerning the price of goods, services, or property or the reasons for, existence of, or amounts of price reductions"; and "fail[ing] to disclose material information concerning goods, services, or property which information was known at the time of an advertisement or sale if such failure to disclose such information was intended to induce the consumer to enter into a transaction." Colo. Rev. Stat. § 6-1-105.

147.     Diageo is a "person" under Colo. Rev. Stat. § 6-1-102(6).

148.     Plaintiffs and class members are "consumers" for purposes of Col. Rev. Stat § 6-1-113(1)(a).

149.     Diageo's conduct, as set forth above, occurred in the conduct of trade or commerce.

150.     Pursuant to Colo. Rev. Stat. § 6-1-113, Plaintiffs seek monetary relief against Diageo measured as the greater of (a) actual damages in an amount to be determined at trial and

discretionary trebling of such damages, or (b) statutory damages in the amount of $500 for each plaintiff or class member.

151.    Plaintiffs also seek an order enjoining Diageo's unfair, unlawful, or deceptive practices, declaratory relief, attorneys' fees, and any other just and proper remedy under the Colorado CPA.

## SIXTH CLAIM FOR RELIEF

### VIOLATION OF THE MARYLAND CONSUMER PROTECTION ACT
### (MD. CODE LAW § 13-101, *et seq.*, on Behalf of the Maryland Class)

152.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this complaint.

153.    This claim is brought by the Maryland Plaintiffs individually and on behalf of the Maryland Class for purchases that occurred in Maryland.

154.    The Maryland Consumer Protection Act ("Maryland CPA") provides that a person may not engage in any unfair or deceptive trade practice in the sale or lease of any consumer good, including "failure to state a material fact if the failure deceives or tends to deceive"; and "false or misleading representation[s] of fact which concern[] . . . [t]he reason of or the existence or amount of a price reduction"; and "[d]eception, fraud, false pretense, false premise, misrepresentation, or knowing concealment, suppression, or omission of any material fact with the intent that a consumer rely on the same," Md. Code, Com. Law § 13-301, regardless of whether the consumer is actually deceived or damaged, Md. Code, Com. Law § 13-302.

155.    Diageo, the Maryland Plaintiffs, and class members are "persons" within the meaning of Md. Code, Com. Law § 13-101(h).

156.    Pursuant to Md. Code, Com. Law § 13-408, the Maryland Plaintiffs seek actual damages, attorneys' fees, and any other just and proper relief available under the Maryland CPA.

## SEVENTH CLAIM FOR RELIEF

## VIOLATION OF THE PENNSYLVANIA UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION LAW
### (73 PA. CONS. STAT. § 201-1, *et seq.*, on Behalf of the Pennsylvania Class)

157. Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this complaint.

158. This claim is brought by the Pennsylvania Plaintiff individually and on behalf of the Pennsylvania Class for purchases that occurred in Pennsylvania.

159. The Pennsylvania Unfair Trade Practices and Consumer Protection Law ("Pennsylvania CPL") prohibits unfair or deceptive acts or practices, including: "[c]ausing likelihood of confusion or of misunderstanding as to the source, sponsorship, approval or certification of goods or services"; or "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have"; or "[r]epresenting that goods or services are of a particular standard, quality or grade, or that goods are of a particular style or model, if they are of another." 73 Pa. Cons. Stat. § 201-2(4).

160. Diageo, the Pennsylvania Plaintiff, and class members are "persons" within the meaning of 73 Pa. Cons. Stat. § 201-2(2).

161. Plaintiff purchased Diageo's adulterated tequila primarily for personal, family, or household purposes within the meaning of 73 Pa. Cons. Stat. § 201-9.2.

162. All of the acts complained of herein were perpetrated by Diageo in the course of trade or commerce within the meaning of 73 Pa. Cons. Stat. § 201-2(3).

163. Diageo is liable to the Pennsylvania Plaintiff and class members for treble their actual damages or $100, whichever is greater, and attorneys' fees and costs. 73 Pa. Cons. Stat. § 201-9.2(a). The Pennsylvania Plaintiff and class members are also entitled to an award of

punitive damages given that Diageo's conduct was malicious, wanton, willful, oppressive, or exhibited a reckless indifference to the rights of others.

## EIGHTH CLAIM FOR RELIEF

### VIOLATION OF THE ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT
### (815 ILL. COMP. STAT. § 505/1, *et seq.*, on Behalf of the Illinois Class)

164.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this complaint.

165.    This claim is brought by the Illinois Plaintiffs individually and on behalf of the Illinois Class for purchases that occurred in Illinois.

166.    The Illinois Consumer Fraud and Deceptive Business Practices Act ("Illinois CFA") prohibits "unfair or deceptive acts or practices, including, but not limited to, the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact . . . in the conduct of trade or commerce . . . whether any person has in fact been misled, deceived, or damaged thereby." 815 Ill. Comp. Stat. § 505/2.

167.    Diageo is a "person" as that term is defined in 815 Ill. Comp. Stat. § 505/1(c).

168.    The Illinois Plaintiffs and class members are "consumers" as that term is defined in 815 Ill. Comp. Stat. § 505/1(e).

169.    Pursuant to 815 Ill. Comp. Stat. § 505/10a(a), the Illinois Plaintiffs seek monetary relief against Diageo in the amount of actual damages, as well as punitive damages because Diageo acted with fraud and/or malice and/or was grossly negligent.

170.    The Illinois Plaintiffs also seek an order enjoining Diageo's unfair and/or deceptive acts or practices, attorneys' fees, and any other just and proper relief available under 815 Ill. Comp. Stat. § 505/1, *et seq.*

**NINTH CLAIM FOR RELIEF**

**VIOLATION OF THE TEXAS DECEPTIVE TRADE PRACTICES AND CONSUMER PROTECTION ACT**
**(TEX. BUS. & COM. CODE § 17.4, *et seq.*, on Behalf of the Texas Class)**

171.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this complaint.

172.    This claim is brought by the Texas Plaintiffs individually and on behalf of the Texas Class for purchases that occurred in Texas.[52]

173.    The Texas Plaintiffs and the Texas Class are individuals with assets of less than $25 million (or are controlled by corporations or entities with less than $25 million in assets). *See* TEX. BUS. & COM. CODE § 17.45.

174.    The Texas Deceptive Trade Practices-Consumer Protection Act ("Texas DTPA") provides a private right of action to a consumer where the consumer suffers economic damage as the result of either (i) the use of a false, misleading, or deceptive act or practice specifically enumerated in TEX. BUS. & COM. CODE § 17.46(b); or (ii) "an unconscionable action or course of action by any person." TEX. BUS. & COM. CODE § 17.50(a)(2) & (3). The Texas DTPA declares several specific actions to be unlawful, including: "(5) Representing that goods or services have. sponsorship, approval, characteristics, ingredients, uses, benefits, or qualities that they do not have," or "(7) Representing that goods or services are of a particular standard, quality, or grade,

---

[52] Pursuant to the TEX. BUS. & COM. CODE, the Texas Plaintiffs will provide written notice to defendant within 60 business days of service of this pleading.

or that goods are of a particular style or model, if they are of another." An "unconscionable action or course of action," means "an act or practice which, to a consumer's detriment, takes advantage of the lack of knowledge, ability, experience, or capacity of the consumer to a grossly unfair degree." TEX. BUS. & COM. CODE § 17.45(5). As detailed herein, Diageo has engaged in an unconscionable action or course of action and thereby caused economic damages to the Texas Class.

175.    In the course of business, Diageo misrepresented the nature of its Product, and its unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including the Texas Plaintiffs and the other Texas Class members, about the Product.

176.    Diageo knew or should have known that its conduct violated the Texas DTPA.

177.    The Texas Plaintiffs and other members of the Texas Class relied on Diageo's misrepresentations regarding its Products to their detriment.

178.    The Texas Plaintiffs and the Texas Class suffered ascertainable loss caused by Diageo's misrepresentations and its concealment of and failure to disclose material information. Class members who purchased Diageo's Product either would have paid less for their tequila or would not have purchased the tequila at all but for Diageo's violations of the Texas DTPA.

179.    As a direct and proximate result of Diageo's violations of the Texas DTPA, the Texas Plaintiffs and the Texas Class have suffered injury-in-fact and/or actual damage.

180.    Pursuant to TEX. BUS. & COM. CODE § 17.50(a)(1) and (b), the Texas Plaintiffs seek monetary relief against Diageo measured as actual damages in an amount to be determined at trial, treble damages for Diageo's knowing violations of the Texas DTPA, and any other just and proper relief available under the Texas DTPA.

181. Alternatively, or additionally, pursuant to TEX. BUS. & COM. CODE § 17.50(b)(3) & (4), the Texas Plaintiffs and the Texas Class are also entitled to disgorgement or to rescission or to any other relief necessary to restore any money or property that was acquired from them based on violations of the Texas DTPA or which the Court deems proper.

## TENTH CLAIM FOR RELIEF

### UNJUST ENRICHMENT
**(On behalf of all Plaintiffs and all Classes)**

182. Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this complaint.

183. Substantial benefits have been conferred on Diageo by Plaintiffs and the members of the Class through the purchase of the Products. Diageo knowingly and willfully accepted and enjoyed these benefits.

184. Diageo either knew or should have known that the payments rendered by Plaintiffs were given with the expectation that the Products were 100% agave tequila. As such, it would be inequitable for Diageo to retain the benefit of the payments under these circumstances.

185. Diageo was obligated to disclose that the Products were not 100% agave tequila because:

(a) Diageo was responsible for manufacturing and distributing its Products; and

(b) Diageo knew or should have known that its Products were not 100% agave tequila.

186. Diageo's acceptance and retention of these benefits of the payments from Plaintiffs and the Classes under the circumstances alleged herein make it inequitable for Diageo to retain the benefits without payment of the value to Plaintiffs and the Classes.

187.     Plaintiffs and the Classes are entitled to recover from Diageo all amounts wrongfully collected and improperly retained by Diageo, plus interest thereon.

188.     Plaintiffs and the Classes seek actual damages, injunctive, and declaratory relief, statutory damages, attorneys' fees, costs, and any other just and proper relief available under the applicable laws.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment against Diageo as follows:

A.     The Court determine that this action may be maintained as a class action under Rules 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure, appoint Plaintiffs as Class Representatives and their counsel of record as Class Counsel, and direct that notice of this action, as provided by Rule 23(c)(2) of the Federal Rules of Civil Procedure, be given to the Classes, once certified;

B.     Adjudication that the acts alleged herein constitute violations of the relevant cited state laws;

C.     Adjudication that the acts alleged herein constitute unjust enrichment;

D.     Judgment against Diageo for the damages sustained by Plaintiffs and the Classes, and for any additional damages, penalties and other monetary relief provided by applicable law, including treble damages;

E.     Pre-judgment and post-judgment interest on such monetary relief;

F.     Equitable relief requiring that Diageo cease its violations of law as requested;

G.     The costs of bringing this suit, including reasonable attorneys' fees; and

H.     All other relief to which Plaintiffs and members of the Classes may be entitled at law or in equity.

## JURY TRIAL DEMANDED

Plaintiffs hereby demand a trial by jury of all the claims asserted in this Complaint.

DATED: September 12, 2025

Respectfully submitted,

By: */s/ Nathaniel A. Tarnor*
    Nathaniel A. Tarnor (NT2797)
HAGENS BERMAN SOBOL SHAPIRO LLP
594 Dean Street, Suite 24
Brooklyn, NY 11238
Telephone: (646) 543-4992
nathant@hbsslaw.com

HAGENS BERMAN SOBOL SHAPIRO LLP
Steve W. Berman (admitted *pro hac vice*)
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
steve@hbsslaw.com

BARON & BUDD, P.C.
Roland Tellis (admitted *pro hac vice*)
David Fernandes (admitted *pro hac vice*)
Isaac Miller (admitted *pro hac vice*)
15910 Ventura Boulevard, Suite 1600
Encino, CA 91436
Telephone: 818.839.2333
Facsimile: 214.279.9915
rtellis@baronbudd.com
dfernandes@baronbudd.com
imiller@baronbudd.com

THE BERKMAN LAW OFFICE, LLC
Robert J. Tolchin
829 E. 15th Street
Brooklyn, NY 11230
Telephone: (917) 405-0426
rtolchin@berkmanlaw.com

*Attorneys for Plaintiffs and the Proposed Classes*

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the CM/ECF system will be sent

electronically to the registered participants as identified on the Notice of Electronic Filing (NEF)

on September 12, 2025.

Dated: September 12, 2025                    */s/ Nathaniel A. Tarnor*
                                            Nathaniel A. Tarnor