
Kaplan
Martin

1133 Avenue of the Americas
Suite 1500
New York, New York 10036

(212) 316-9500
tmartin@kaplanmartin.com

September 26, 2025

**VIA ECF**
The Honorable LaShann DeArcy Hall
United States District Court, Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:    *Pusateri, et al. v. Diageo North America, Inc.*, No. 25 Civ. 2482 (E.D.N.Y.)

Dear Judge DeArcy Hall:

Pursuant to Rule III.A of Your Honor's Individual Practices, we write on behalf of Defendant Diageo North America, Inc. ("Diageo") to respectfully request a pre-motion conference in advance of moving to dismiss Plaintiffs' Amended Complaint ("Am. Compl.", ECF 23).

Four months after filing their original deficient pleading, Plaintiffs' Amended Complaint fixes nothing. They still rely on unsubstantiated speculation drawn from blogs and fringe media reports— sources that never once mention Diageo—to falsely impugn the company by association. *See* ECF 12 at 1-2. They still fail to allege a *single* fact about Diageo's manufacturing process to support their baseless claims. *Id.* at 2. And they still conceal the most basic details of their supposed tequila "testing": who performed it, when or where it was done, how it was conducted, or what chain of custody, if any, was maintained for the handful of samples. *Id.*

All Plaintiffs have done is tack on six new statewide classes and add a smattering of vague and incoherent testing allegations that only underscore the implausibility of their claims. They continue to mischaracterize the reliability of their testing by selectively quoting sources to omit qualifiers that cut against them. They allege purported results that are incomplete, inconsistent, and unsupported by the very studies they cite, failing to provide lab reports or any other verifiable details that would allow Diageo (and this Court) to understand the allegations against it. And they rely on undated testing of just *five* samples to make sweeping (and false) claims about every bottle of Casamigos and Don Julio tequila sold in eight states over many years. In short, the amendment is nothing new—it is the same baseless theory repackaged with equally implausible allegations.

Plaintiffs do not allege any plausible basis for their claims because they cannot: Casamigos and Don Julio brand tequilas are in fact 100% Blue Weber agave and certified by Mexico's Consejo Regulador del Tequila ("CRT"), the only body authorized to verify compliance through a rigorous field-to-shelf regulatory process. As with their original pleading, the Amended Complaint rests on conjecture, misrepresented science, and facially deficient "testing." What it does not provide are plausible allegations supporting Plaintiffs' claims. It should be dismissed.[1]

---

[1] This letter sets forth arguments Diageo presently intends to advance in its motion to dismiss. Diageo may identify, further develop, and assert additional grounds for dismissal in its briefing.

***Plaintiffs' "Testing" Allegations Fail to Plead Falsity.*** Plaintiffs lean on unsupported rumors to cast spurious aspersions on the CRT, but do not dispute that Casamigos and Don Julio tequilas undergo the CRT's rigorous certification process, which verifies the authenticity of Diageo's "100% agave" tequila products. Instead, they ask this Court to accept that alleged undated testing of five samples somehow permits the inference that Diageo has adulterated millions of bottles of tequila nationwide over many years. That leap is implausible.

The pleading defects are glaring. To start, Plaintiffs withhold the most basic information necessary to evaluate the plausibility of their testing allegations. They still do not attach the supposed test results or identify when and where the samples were obtained, who conducted the testing, what qualifications those individuals had, or whether any chain of custody was maintained. Am. Compl. ¶¶ 46-48. These omissions are fatal. *See Turnipseed v. Simply Orange Juice Co.*, 2022 WL 657413, at *4 (S.D.N.Y. Mar. 4, 2022) (testing allegations insufficient where they lacked "the specific date, time, or place of the testing, who conducted the testing, the qualifications of the testers, etc."); *Myers v. Wakefern Food Corp.*, 2022 WL 603000, at *4 (S.D.N.Y. Mar. 1, 2022) (testing allegations inadequate for failure to allege "the specific date, time, or place of the testing, who conducted the testing, the qualifications of the testers, etc."); *Santiful v. Wegmans Food Markets, Inc.*, 2022 WL 268955, at *4 (S.D.N.Y. Jan. 28, 2022) (same). Yet Plaintiffs go further, attempting to stretch five samples into claims that "all" Casamigos and Don Julio product lines—more than a dozen in total—are adulterated. Am. Compl. ¶ 50. Courts have squarely rejected such efforts to extrapolate isolated test results to untested product lines, and for that reason alone, Plaintiffs' claims fall well short of plausibility. *See Clinger v. Edgewell Pers. Care Brands, LLC*, 2023 WL 2477499, at *1 (D. Conn. Mar. 13, 2023) ("It would be speculative—rather than plausible—to conclude that benzene was present in Banana Boat product lines for which there are no positive test results for the presence of benzene."); *Krystofiak v. BellRing Brands, Inc.*, 737 F. Supp. 3d 782, 794 (N.D. Cal. 2024) (declining to infer contaminating lead content for untested flavors of protein shake).

Putting those pleading defects aside, Plaintiffs attempt to pass off their testing as reliable science when it is anything but. Though it is by no means clear, Plaintiffs appear to be relying on SNIF-NMR, a variant of Nuclear Magnetic Resonance testing that has never been adopted by the tequila industry nor validated by any regulator or independent authority for testing tequila. It is offered by a single French laboratory, which also authored the only two studies Plaintiffs cite. Am. Compl. ¶¶ 40, 43-44. Far from being a recognized way to identify alcohol source, SNIF-NMR's reliability is unproven for tequila. Indeed, Plaintiffs' own sources acknowledge its shortcomings, yet Plaintiffs continue to misquote a blog post as claiming that NMR can "confirm if tequila has been adulterated," *id* ¶ 36, even though the source actually says "*potentially* confirm." ECF 12 at 2.

Even on their own terms, Plaintiffs' numbers make no sense. The studies they cite measure two distinct carbon positions ($CH_2$ and $CH_3$), but Plaintiffs report only a single $\delta^{13}C$ number per sample—omitting at least one position entirely—before alleging percentages of "agave-derived ethanol" untethered to any disclosed formula, calculation, or margin of error. Am. Compl. ¶ 47. That is not science; it is cherry-picked nonsense dressed up as "data." Courts have been clear: where, as here, a plaintiff "use[s] scientific studies in an effort to raise plausible inferences that marketing is deceptive, and the studies cited do not support her claims, the plaintiff has not plausibly pleaded her claims." *Bermudez v. Colgate-Palmolive Co.*, 667 F. Supp. 3d 24, 37 (S.D.N.Y. 2023); *see also Jiaherb Inc. v. MTC Industries, Inc.*, 2025 WL 2555514, at *16 (D.N.J. Sept. 5, 2025) (declining to credit plaintiff's reliance on NMR testing where it was not industry standard and not required by relevant regulations). Simply put, five samples, tested by an unvalidated method for tequila at an unknown point in time, without any chain of custody, do not plausibly call into question the CRT-certified authenticity of millions of bottles of Diageo tequila.

***Plaintiffs Lack Standing.*** Plaintiffs' claims also fail because they do not allege an injury in fact. When a complaint relies on purported test results, a plaintiff must plausibly allege a "meaningful link exists between the results of testing and a plaintiff's actual purchases." *Hicks v. L'Oreal U.S.A., Inc.*, 2024 WL 4252498, at \*10 (S.D.N.Y. Sept. 19, 2024). That link is missing here. Plaintiffs rely on results from just five samples of tequila, but they do not say when or where those samples were obtained. Am. Compl. ¶ 46. And four Plaintiffs did not even buy the same product types that were supposedly tested, let alone the specific bottles that were supposedly tested. *Id.* ¶¶ 17-21. These gaps—no temporal proximity, no geographic proximity, and no product match—are fatal to standing. *See Barnes v. KOS, Inc.*, 2025 WL 1928027, at \*5 (S.D.N.Y. July 14, 2025) (requiring "a geographic connection between [Plaintiffs'] purchase[s]" and the products that were tested); *Onaka v. Shiseido Ams. Corp.*, 2023 WL 2663877, at \*4 (S.D.N.Y. Mar. 28, 2023) (allegations deficient for failure "to state when Plaintiffs' independent testing was conducted").

The problem is compounded by Plaintiffs' (purported) reliance on just five bottles out of the millions Diageo sells each year. Am. Compl. ¶ 28. That tiny sample, without more, cannot support sweeping allegations across multiple states and multiple years, and courts have rejected attempts to extrapolate from a handful of tests to an entire product line. *See Kell v. Lily's Sweets*, 2024 WL 1116651, at \*4 (S.D.N.Y. Mar. 13, 2024) (testing "just two or three samples" makes it "impermissible conjecture to extrapolate those findings"). Plaintiffs also fail to allege that they purchased Diageo products with any regularity—another fatal omission. *See Onaka*, 2023 WL 2663877, at \*5; Am. Compl. ¶¶ 11-27. Plaintiffs cannot paper over these deficiencies with a conclusory assertion that five undated samples somehow "implicate all of Diageo's tequilas." *Id.* ¶ 50.[2]

***Additional Grounds for Dismissal.*** Plaintiffs' claims should be dismissed for additional independent reasons. *First*, the challenged labeling falls within statutory and common-law safe harbors because it has already been reviewed and certified under federal law. *See* GBL §§ 349(d) & 350-d; *Doug Grant, Inc. v. Greate Bay Casino Corp.*, 3 F. Supp. 2d 518, 536–37 (D.N.J. 1998); Colo. Rev. Code § 6–1–106(1)(a); Fla. Stat. § 501.212(1); 815 Ill. Comp. Stat. § 505/10b(1).

*Second*, Plaintiffs' unjust enrichment claim is duplicative of their consumer fraud theories and cannot stand on its own. *See, e.g.*, *Kandel v. Dr. Dennis Gross Skincare, LLC*, 721 F. Supp. 3d 291, 307 (S.D.N.Y. 2024); *CBD & Sons, Ltd. v. Setteducati*, 2019 WL 396982, at \*15 (D.N.J. Jan. 31, 2019); *Lewis v. Mercedes-Benz USA, LLC*, 530 F. Supp. 3d 1183, 1235 (S.D. Fla. 2021); *Whitaker v. Herr Foods, Inc.*, 198 F. Supp. 3d 476, 494 (E.D. Pa. 2016).

*Finally*, Plaintiffs lack standing to pursue injunctive relief because, with knowledge of the purported misrepresentations, they face no risk of future deception. *See, e.g.*, *Berni v. Barilla S.p.A.*, 964 F.3d 141, 148 (2d Cir. 2020); *Whitaker*, 198 F. Supp. 3d at 496; *Rudy v. Fam. Dollar Stores, Inc.*, 583 F. Supp. 3d 1149, 1167 (N.D. Ill. 2022); *Degioanni v. The Kroger Corp.*, 2024 WL 5402310, at \*14 (S.D. Tex. Nov. 5, 2024). And Plaintiffs' Colorado claims are barred outright: they cannot pursue class-wide relief, cannot seek injunctive relief, and in any event the claim fails for lack of scienter. *See Martinez v. Nash Finch Co.*, 2013 WL 5400413, at \*2 (D. Colo. Sept. 26, 2013); *Martinez v. Nash Finch Co.*, 886 F. Supp. 2d 1212, 1218-19 (D. Colo. 2012); *Allstate Ins. Co. v. Cruz*, 733 F. Supp. 3d 1098, 1110 (D. Colo. 2024).

---

[2] Plaintiffs' tolling allegations are equally deficient. They recite generic claims of "concealment" and "delayed discovery," Am. Compl. ¶¶ 67-76, without identifying any affirmative act by Diageo that actually prevented them from learning the supposed facts underlying their claims. Courts routinely reject such bare allegations as insufficient to toll limitations periods. *See, e.g.*, *Kyszenia v. Ricoh USA, Inc.*, 583 F. Supp. 3d 350, 362 (E.D.N.Y. 2022) ("[g]eneralized or conclusory allegation[s] of fraudulent concealment" not sufficient to toll untimely GBL claim).

Respectfully Submitted,

Timothy S. Martin

cc:       All Counsel of Record (via ECF)