# HAGENS BERMAN

Nathaniel Tarnor    nathant@hbsslaw.com

*ATTORNEYS AT LAW*

**HAGENS BERMAN SOBOL SHAPIRO LLP**
68 3RD STREET, SUITE 249
BROOKLYN, NY 11231

hbsslaw.com

(646) 543-4992 phone    (917) 210-3980 fax

October 3, 2025

**VIA ECF**
The Honorable LaShann DeArcy Hall
United States District Court, Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

    Re:    *Pusateri, et al. v. Diageo North America, Inc.*, No. 25 Civ. 2482 (E.D.N.Y.)

Dear Judge DeArcy Hall:

Despite detailed allegations that Diageo is selling adulterated tequila, the company continues to deny it has a problem. It even tries to shift responsibility to the Mexican regulatory authority, which supposedly "verifies the authenticity of Diageo's '100% agave' tequila products." ECF 25 at 2. Plaintiffs' pleading is a necessary intervention for a company that has ignored its responsibility to truthfully market its tequila products to consumers at fair prices.

Diageo's letter mischaracterizes the Amended Complaint (ECF 23). Plaintiffs' claims do not rest on blogs or speculation, but on laboratory testing of bottles they purchased, corroborated by independent testing done by the Additive Free Alliance ("AFA"), a non-profit dedicated to tequila industry transparency. Nor must Plaintiffs plead Diageo's manufacturing details. At this stage, it is enough to allege false labeling supported by independent testing. Diageo's attacks on SNIF-NMR as unreliable science and its quibbles about isotope reporting are also premature *Daubert* arguments, not Rule 12(b)(6) issues.

In truth, counsel's 2024 investigation, with the assistance of the AFA, uncovered significant tequila adulteration by Diageo that "deceives consumers, undermines legitimate producers, harms agave farmers, and distorts the market for authentic tequila." Am. Compl. ¶¶ 36-39. This adulteration was confirmed by both AFA laboratory testing and independent testing of bottles purchased by some of the Plaintiffs. *Id.* ¶¶ 38, 46. These test results "directly contradict the prominent '100% Agave' labels on Diageo's tequila and confirm that its representations are materially false and misleading." *Id.* ¶ 48. They also corroborate the Mexican agave farmers' public claims of widespread adulteration. *Id.* ¶ 32. Taken together, these allegations easily meet the Second Circuit's pleading standard. *See MacNaughton v. Young Living Essential Oils LC*, 67 F.4th 89, 95 (2d Cir. 2023) (vacating dismissal of consumer protection claims) (citations omitted).

Diageo also argues that Plaintiffs' testing is insufficiently pled. But the Second Circuit has made clear that consumer plaintiffs may rely on outside organizations to support their claims. *MacNaughton*, 67 F.4th at 98 n.9, 100. Indeed, "[a]t the pleading stage, [a plaintiff] need not prove the accuracy of [an outside organization]'s findings or the rigor of its methodology; he need only

generally allege facts that, accepted as true, make his alleged injury plausible." *John v. Whole Foods Market Group, Inc*., 858 F.3d 732, 737 (2d Cir. 2017); *see also Clinger v. Edgewell Pers. Care Brands, LLC, No. 321-CV-1040 (JAM),* 2023 WL 2477499, at *2 (D. Conn. Mar. 13, 2023) (holding consumer protection claim allegations were sufficient, even though plaintiffs "fail[ed] to identify the name of the laboratory, the lots it tested, and whether the laboratory followed FDA-required' procedures").[1] Rather than confront this authority, Diageo relies on cases decided before *MacNaughton* or from outside the Second Circuit.

Diageo further argues that Plaintiffs are attempting to pass off Nuclear Magnetic Resonance "testing as reliable science when it is anything but" because it "has never been adopted by the tequila industry." ECF 25 at 2. But the pleading stage is not the time for a disguised *Daubert* challenge. *See Noriega v. Abbott Laboratories*, 714 F. Supp. 3d 453, 460 (S.D.N.Y. 2024) (citing cases that the weight of a scientific study cannot be resolved by a motion to dismiss). Nor is it the time to debate the appropriateness of Plaintiffs' class claims or whether Plaintiffs' samples somehow permit "the inference that Diageo has adulterated millions of bottles of tequila nationwide over many years." ECF 25 at 2. Those issues are for summary judgment or class certification. *See In re Initial Pub. Offerings Sec. Litig*., 471 F.3d 24, 42 (2d Cir. 2006) ("A district judge is to assess all of the relevant evidence admitted at the class certification stage and determine whether each Rule 23 requirement has been met").

Plaintiffs also allege that *tequila bottles they purchased* were tested and found not to contain "100% Agave," contrary to Diageo's product labeling. Am. Compl. ¶ 48. That allegation alone supports standing. These test results are *in addition* to AFA's independent testing, which show the same adulteration. Am. Compl. ¶¶ 38, 46. Plaintiffs further allege where and when they purchased the bottles they tested, with dates falling within the relevant statutes of limitation. *Id.* ¶¶ 11-29.[2] Diageo's complaint about sample size ignores that many of the plaintiffs consumed their bottles before filing their lawsuit. Plaintiffs should not be penalized for that when there is plausible evidence of widespread adulteration. If Diageo's products were truly "100% Agave," no test should show adulteration. Yet *every* sample, from both the AFA and Plaintiffs, has. That

---

[1] Diageo's reliance on *Clinger* is misplaced. *Clinger* reaffirmed that, at the pleading stage, plaintiffs may rely on independent testing of the same product line they purchased to plausibly allege injury, even if their specific bottles were not tested. 2023 WL 2477499, at *3-6. The only claims dismissed in *Clinger* involved plaintiffs who purchased Banana Boat products from entirely different lines than those shown by testing to contain benzene. *Id.* at *7. Here, all Plaintiffs purchased bottles from the very product lines that were tested (Casamigos and Don Julio tequilas) and rely on the same adulterated base spirit, and Plaintiffs tested multiple variants across both brands (Blanco, Reposado and Añejo). Am. Compl. at ¶¶ 14-27, 47, 50.

[2] Plaintiffs allege that Diageo knowingly misrepresented its tequila as "100% agave," failed to disclose adulteration, and engaged in marketing designed to conceal the true composition of its products. Am. Compl. ¶¶ 69–74. Those allegations plausibly allege affirmative concealment sufficient to toll the limitations period. *State of New York v. Hendrickson Bros.*, 840 F.2d 1065, 1083 (2d Cir. 1988) (holding that fraudulent concealment tolling is available where "the defendant took affirmative steps to prevent the plaintiff's discovery of his claim").

consistency supports the inference that adulteration extends across Diageo's Casamigos and Don Julio product lines (aged or unaged tequila), which share the same base spirit. *Id.* ¶ 50.

Plaintiffs' claims are also limited in scope: they challenge only Diageo's Casamigos and Don Julio tequilas and do not attempt to extrapolate beyond those product lines (*i.e.*, to Diageo's whiskey lines). Accordingly, Plaintiffs' testing allegations are therefore targeted, reasonable, and sufficient to plausibly state consumer claims for the tequila they purchased.

Diageo's remaining arguments are equally premature. *First*, Diageo's supposed safe harbor defense fails at the pleading stage. *See Singleton v. Fifth Generation, Inc.*, 2016 WL 406295, at *8 (N.D.N.Y. Jan. 12, 2016) (safe harbor argument in falsely labeled alcohol case is premature at a motion to dismiss stage). *Second*, its challenge to Plaintiffs' unjust enrichment claims as duplicative of their consumer protection claims ignores Federal Rule of Civil Procedure 8(d)(3) and Second Circuit precedent that dismissal of alternative unjust enrichment claims is premature. *See* FRCP 8(d)(3) ("A party may state as many separate claims or defenses as it has, regardless of consistency"); *see also MacNaughton*, 67 F.4th at 100 ("the district court should decide this question in the first instance, once the record has been more fully developed and after considering the viability of the [consumer] claims."). *Third*, Diago's attack on Plaintiffs' request for injunctive relief is misplaced. This Court does not need to address Diageo's objection to injunctive relief at the pleading stage. "[I]njunctive relief is a remedy, and not a cause of action." *Samele v. Zucker*, 324 F. Supp. 3d 313, 332 (E.D.N.Y. 2018). Thus, it is premature to address appropriate remedies at the motion to dismiss stage that is focused on the viability of claims. *Id.* at 334. Plaintiffs have also alleged they "intend to purchase Diageo's Product again when they can do so with the assurance that the representations of Defendant's Product are accurate." Am. Compl. ¶ 54. That allegation is enough to plead standing for prospective relief. *DeCoursey v. Murad, LLC*, 673 F. Supp. 3d 194, 224 (N.D.N.Y. 2023) ("plaintiffs have standing to seek prospective injunctive relief when they assert that they will purchase a product in the future if it is altered."). *Finally*, Colorado law now expressly allows class-wide relief and injunctive remedies under the Colorado Consumer Protection Act, as confirmed in Diageo's own precedent. *See Allstate Ins. Co. v. Cruz*, 733 F. Supp. 3d 1098, 1110-11 (D. Colo. 2024). (In fact, Diageo's subsequent letter now concedes it misrepresented Colorado law, ECF 26.)

In short, Plaintiffs' claims are not based on rumor but on sophisticated laboratory testing of bottles they purchased, supported by independent testing done by the AFA. That is more than enough to allege plausibility. Rule 12(b)(6) requires no more.

                                    Sincerely,

                                    HAGENS BERMAN SOBOL SHAPIRO LLP

                                    <u>/s/ *Nathaniel A. Tarnor*</u>

Cc: All Counsel of Record (via ECF)