**HAGENS BERMAN**

**Nathaniel Tarnor    nathant@hbsslaw.com**

ATTORNEYS AT LAW

**HAGENS BERMAN SOBOL SHAPIRO LLP**
68 3RD STREET, SUITE 8
BROOKLYN, NY  11231

**hbsslaw.com**

(646) 543-4992 phone    (917) 210-3980 fax

June 23, 2026

**VIA ECF**
The Honorable LaShann DeArcy Hall
United States District Court, Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

  Re: *Pusateri, et al. v. Diageo North America, Inc*., No. 25 Civ. 2482 (E.D.N.Y.)

Dear Judge DeArcy Hall:

  Plaintiffs respectfully submit this brief response to Diageo's June 16, 2026, Notice of Supplemental Authority. ECF No. 41. Neither decision cited by Diageo supports dismissal of Plaintiffs' Amended Complaint because both were decided on materially different facts.

  Diageo cites *Dunning v. Supergoop, LLC*, 2026 WL 501627 (S.D.N.Y. Feb. 24, 2026) and *Pellegrino v. Procter & Gamble Co.*, 2026 WL 880573 (S.D.N.Y. Mar. 31, 2026) for the proposition that Plaintiffs must plead facts supporting a plausible inference that testing results can be extrapolated to their own purchases. ECF No. 41 at 1. But the relevant inquiry identified in *Dunning* and *Pellegrino* is whether the complaint plausibly alleges that plaintiffs suffered the type of injury that entitles them to relief. *Dunning*, 2026 WL 501627 at *4; *accord Pellegrino*, 2026 WL 880573 at *7-8. As both courts explained, plaintiffs may satisfy that requirement by testing products they purchased or establishing, through testing results, that "mislabeling was 'so widespread as to render it plausible that any Plaintiff purchased a mislabeled Product at least once.'" *Dunning*, 2026 WL 501627 at *6; *see also Pellegrino*, 2026 WL 880573 at *10 (similar language quoted from *Dunning*, 2025 WL 34822, at *5). Plaintiffs do both.

  As a threshold matter, the Declaration of Avi Pusateri states that their bottle of Don Julio 1942 Añejo, purchased in January 2025, was tested by Eurofins and found to contain non-agave alcohols. ECF No. 31-6 at ¶¶ 6-10. That purchase and testing occurred during the same period as Plaintiffs' purchases and the testing alleged in the Amended Complaint. ECF No. 23 ¶¶ 11-27, 36-38, 40-50. These results corroborate Plaintiffs' allegations that Diageo's "100% de Agave" representations are false and that adulteration is widespread across Diageo Products made in Mexico. ECF No. 23 at ¶¶ 28-29, 31-37. Taken together, these facts plausibly support the allegation that the Diageo Products purchased by Plaintiffs were adulterated.

  Plaintiffs' testing allegations are likewise readily distinguishable from those in *Dunning* and *Pellegrino*. In *Dunning*, the court concluded that the complaint failed to allege facts demonstrating a meaningful connection between the tested products and the plaintiffs' purchases,

including facts regarding temporal proximity, geographic proximity, and the prevalence of the alleged issue. *Dunning*, 2026 WL 501627, at *6-7. The court further concluded that the plaintiffs had tested too few samples to support an inference of widespread mislabeling. *Id.* In *Pellegrino*, certain plaintiffs survived dismissal because they either purchased a product that was tested or purchased a similar product in close temporal and geographical proximity to a tested sample. *Pellegrino*, 2026 WL 880573 at *10-11. The court dismissed claims where plaintiffs could not plausibly connect their purchases to tested samples through temporal or geographic proximity or where the purchased products were different varieties than the tested products. *Id.*

Here, Plaintiffs allege precisely the type of connection that corroborates their allegations of widespread mislabeling. Plaintiffs allege that they purchased Diageo tequila products between 2023 and 2025 and that a selection of those products purchased by Plaintiffs was tested between 2024 and 2025 and found to be adulterated. ECF No. 23 at ¶¶ 11-27, 38, 40, 46-50. Plaintiffs further corroborate adulteration across Diageo's tequila products by alleging that additional independent testing conducted during the same period showed adulteration. *Id.* ¶ 38. Moreover, every flagship variety of Diageo tequila at issue was tested and showed adulteration. *Id.* ¶¶ 40, 46-50. Indeed, Plaintiffs specifically allege that their test results "implicate ***all of Diageo's tequilas because they show that its entire tequila line relies on the same adulterated base spirit***." *Id.* at ¶ 50 (emphasis added). Thus, unlike the plaintiffs in *Dunning* and the claims dismissed in *Pellegrino*, there is no geographic variation affecting Plaintiffs' testing, and Plaintiffs do not rely on a small number of products purchased by counsel in a single transaction. Rather, Plaintiffs allege testing of products they purchased, corroborating independent testing, and non-testing facts supporting an inference that the alleged adulteration was widespread across Diageo's tequila products. These allegations plausibly establish a meaningful link between the tested products and Plaintiffs' purchases, supporting an inference that the alleged adulteration was sufficiently prevalent to find standing.

Respectfully submitted,

HAGENS BERMAN SOBOL SHAPIRO LLP

/s/ *Nathaniel A. Tarnor*


Cc: All Counsel of Record (via ECF)